THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>Plaintiff,<br><br>v.<br><br>COINSTAR, INC., *et al.*,<br><br>Defendants. | CASE NO. C13-1014-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion for partial summary judgment. (Dkt. No. 19.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I.   **BACKGROUND**

This is a declaratory judgment action in which Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") seeks a declaration that it has no duty to defend or indemnify Defendant Redbox Automated Retail, LLC ("Redbox") for the class action lawsuit captioned *Sterk v. Redbox Automated Retail, LLC*, Case No. C11-1729 (N.D. Ill. 2011). Redbox is a wholly-owned subsidiary of Defendant Coinstar, Inc.,[1] which is listed as the insured in

---

[1] Coinstar is now known as Outerwall, Inc. The Court refers to "Coinstar" in this order based on the parties' briefing and the fact that Coinstar is listed in the relevant insurance policies.

ORDER
PAGE - 1

multiple Commercial General Liability Insurance policies issued by National Union. Redbox tendered a claim to National Union after it was sued in the United States District Court for the Northern District of Illinois for violations of the Video Privacy Protection Act ("VPPA"). (Dkt. No. 19 at 2–3.) National Union agreed to defend Redbox subject to a reservation of rights and subsequently commenced this insurance coverage declaratory judgment action. (*Id*.)

### A.     The *Sterk* Lawsuit

Defendant Redbox operates automated DVD-vending machines in various locations around the United States. (Dkt. No. 23-1 at ¶¶ 2, 24.) In order to obtain a rental DVD, Blu-ray disc, or video game from a Redbox vending machine, customers input their personal information into the digital record system on the machines and pay via credit card. (*Id.* at ¶¶ 2–4, 25–26.) According to the plaintiffs in *Sterk v. Redbox Automated Retail, LLC*, Redbox maintains customers' "personally identifiable information," including their name, billing and contact information, credit card numbers, and video rental history for indefinite periods of time after customers obtain rentals from Redbox kiosks. (*Id.* at ¶ 31.) The complaint further alleges that Redbox uses customers' personal information for marketing purposes and discloses customers' personal information to third parties without their express permission. (*Id.* at ¶¶ 34, 39, 44.) Plaintiffs allege that this retention and disclosure of their personal information violates the VPPA, 18 U.S.C. § 2710 *et seq.* (*Id.*)

On August 16, 2013, the District Court granted Redbox's motion for summary judgment in *Sterk* and entered judgment in Redbox's favor. The Court held that Redbox's disclosure of personally identifiable information to a third-party vendor fell within one of the VPPA's limited exceptions to liability for disclosure of such information. (Dkt. No. 20, Ex. D.) The plaintiffs filed a notice of appeal to the United States Court of Appeals for the Seventh Circuit. That appeal remains pending.

### B.     The CGL Insurance Policies at Issue

National Union issued two Commercial General Liability Insurance policies to Coinstar,

Inc., which owns Redbox. Policy No. 457-30-37 was in effect from September 1, 2009 to September 1, 2010. (Dkt. No. 20, Ex. B.) Policy No. 457-32-92 was in effect from September 1, 2010 to September 1, 2011. (*Id.*, Ex. C.) Both policies provide coverage for "personal injury and advertising injury" liability under the Coverage B agreements. (Dkt. No. 20, Ex. B at NU 028; Ex. C at NU 104.) As relevant to the instant dispute, the policies provide the following definition:

> 14.  "Personal injury and advertising injury" means injury, including consequential "bodily injury", humiliation, mental anguish or shock, arising out of one or more of the following offenses:
>
> [. . .]
>
> e.  Oral or written publication, in any manner, of material that violates a person's right of privacy.

(*Id.*, Ex. B at NU 036; Ex. C at NU 112.) The policies also contain numerous exclusions applicable to Coverage B. Specifically relevant is Exclusion (p), which provides as follows:

> **Exclusion – Violation of Statutes in Connection with Sending, Transmitting, or Communicating Any Material Or Information**
>
> This insurance does not apply to any loss, injury, damage, claim, suit, cost or expense arising out of or resulting from, caused directly or indirectly, in whole or in part by, any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

(*Id.*, Ex. B at NU 084; Ex. C at 160.)

National Union now moves for partial summary judgment that the policies do not require it to defend or indemnify Redbox for its alleged violations of the VPPA. Plaintiff argues, *inter alia*, that (a) the allegations in the *Sterk* lawsuit do not implicate any "personal injury or advertising injury" because the plaintiffs did not allege the occurrence of any "oral or written publication" of material that violates a person's privacy; and (b) that the "Violation of Statutes" exclusion clearly precludes coverage for alleged violations of the VPPA, which by its plain terms

prohibits the disclosure—*i.e.*, the "sending, transmitting or communicating"—of private information.[2] Upon review, the Court agrees that Exclusion (p) precludes any possible coverage for Redbox's alleged VPPA violations.

## II. DISCUSSION

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(a). In Washington, the interpretation of an insurance policy is a question of law. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 881 P.2d 1020, 1025 (Wash. 1994). Courts construe the terms of an insurance policy in a "fair, reasonable, and sensible" manner, as "the average person purchasing insurance" would understand them. *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002) (quotation marks omitted). If the policy language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. *Int'l Ins. Co.*, 881 P.2d at 1025.

Under Washington law, the duty to defend is broader than the duty to indemnify. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wash.2d 55, 64 (2000). The duty to defend arises at the time an action is first brought, and is based on the potential for liability. *Truck Ins. Exch. V. VanPort Homes, Inc.*, 147 Wash.2d 751, 760 (2002). "The duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Id.* (citation and quotation omitted). Conversely, the duty to indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the policy." *Hayden*, 141 Wash.2d at 64. An insurer's duty to defend an insured ends when it is determined that a claim is not covered. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 405 (2010); *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 561 (1998).

---

[2] Because the Court concludes that Exclusion (p) bars any possible coverage, there is no need to determine whether the alleged disclosures in *Sterk* constitute a "publication" sufficient to trigger coverage or whether Exclusion (a), the "Knowing Violation of Rights of Another" exclusion, applies.

Exclusion (p) bars coverage. That provision, in plain and unambiguous terms, precludes coverage for any injury that arises from "any act that violates any statute . . . that addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever." (*Id.*, Ex. B. at NU 084; Ex. C at 160.) Here, the *Sterk* plaintiffs allege that Redbox's retention of private customer information and disclosure of the same to third-parties violates the Video Protection Privacy Act. *See* 18 U.S.C. § 2710, *et seq.* The VPPA expressly "prohibits a 'video tape service provider' from disclosing [to any person] 'personally identifiable information' about one of its consumers." *Lane v. Facebook, Inc.*, 696 F.3d 811, 822 (9th Cir. 2012); *accord In re Hulu Privacy Litigation*, No. C11-3764, 2012 WL 3282960, at *1 (N.D. Cal. Aug. 10, 2012) ("VPPA "prohibits a 'video tape service provider' from transmitting personal identifying information of 'consumers.'"); *accord Mollett v. Netflix, Inc.*, No. C11-1629, 2012 WL 3731542, at *2 (N.D. Cal. Aug. 17, 2012) (same); *Gonzalez v. Central Elec. Co-op, Inc.*, No. C08-6236, 2009 WL 3415235, at *9 (D. Or. Oct. 15, 2009) (same). The sole purpose of the VPPA is to protect consumers' privacy by prohibiting the "sending, transmitting or communicating" of their personal information "to any person" except in specific, limited circumstances. *See* 18 U.S.C. § 2710(b). Neither the *Sterk* plaintiffs nor Defendant Redbox have suggested any other cause of action that might be gleaned from the facts alleged. Because the *Sterk* plaintiffs have sued Redbox for violations of the VPPA, any potential liability for Redbox would arise only from "act[s] that violate a[] statute that addresses or applies to the sending, transmitting or communicating of . . . material or information."[3] (Dkt. No. 20, Ex. B. at NU 084; Ex. C at 160.) According to the unambiguous terms of Exclusion (p), there is no basis for Redbox to obtain coverage under the policies at issue.

//

---

[3] Similarly, there is no basis for coverage with regard to the *Sterk* plaintiffs' breach of contract claim, since that claim merely states that Redbox breached the customer contract because the agreement incorporated the VPPA as existing law.

ORDER
PAGE - 5

To avoid the plain reach of Exclusion (p), Redbox raises numerous arguments. First, Redbox invites the Court to consider (i) language from previous versions of Exclusion (p) found in other policies and (ii) the "No Impact in Coverage" explanatory note that accompanied the policies at issue. According to Redbox, a review of the older policy language and explanatory note demonstrates that what Exclusion (p) really refers to is not "any statute . . . . that addresses or applies to the sending, transmitting or communicating of any material or information[,]" but only statutes such as the Telephone Consumer Protection Act or CAN-SPAM Act of 2003, which prohibit companies from communicating *directly with consumers* by calling or sending texts, facsimiles, or e-mails. (Dkt. No. 22 at 14–15.)

Redbox's argument is unavailing for two reasons. First, the language of older policies is irrelevant. The language in Exclusion (p) of the governing policies—that is, the policies that Redbox's parent company purchased and signed, and which govern the instant dispute—is unambiguous and simply does not contain the language Redbox now desires. Given the clarity of the language, the Court finds no occasion to "modify it or create ambiguity" where none exists. *Int'l Ins. Co.*, 881 P.2d at 1025; *see Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash. 2d 165, 181 (Wash. 2005) ("Where [] the exclusion unambiguously applies to the facts of the case at hand, the plain language must be applied without reference to extrinsic evidence regarding the intent of the parties."). Second, even if the Court did consider the previous version of Exclusion (p), Redbox's argument would be unpersuasive. The previous version of Exclusion (p) referred specifically to the TCPA and CAN-SPAM Act of 2003, but also precluded coverage for injuries arising from an any acts alleged to violate "[a]ny statute, ordinance, or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information." (Dkt. No. 22 at 15.) The VPPA is unquestionably a statute "other than the TCPA or CAN-SPAM Act of 2003[] that prohibits or limits the sending, transmitting, communicating or distribution of material or information." Thus, under the language of the old version, the result would be the same. Redbox's reliance on the

ORDER
PAGE - 6

"No Impact to Coverage" explanatory note, which it implies misled it into believing that Exclusion (p) was limited to TCPA-like statutes, cannot withstand scrutiny in light of this conclusion.

What Redbox actually requests is for the Court to read into Exclusion (p) limiting language that would bar coverage only if Redbox's acts allegedly violated "the TCPA, the CAN-SPAM Act of 2003, or an *analogous statute*"—that is, a statute that prohibits entities from sending unsolicited communications directly to consumers. *See*, *e.g.*, *Creative Hospitality Ventures, Inc. v. U.S. Liability Ins. Co.*, 655 F. Supp. 2d 1316, 1341 (S.D. Fla. 2009) (similar exclusion without an "analogous statute" caveat barred coverage for alleged violations of the Fair and Accurate Transaction Act, while exclusion with an "analogous statute" limitation did not apply). But such language is found nowhere in either the current or former version of Exclusion (p) and the Court may not ignore the clear language to which the parties agreed.[4] Accordingly, the Court declines to modify the unambiguous policy language.

Redbox next objects that National Union's (and the Court's) reading of Exclusion (p) is an "unlimited extension of the exclusion to any statute where liability flows from the publication of information," a characterization that it believes would lead to "absurd results." (Dkt. No. 22 at 17.) Under the clear reading of the exclusion, Redbox reasons, there would be no coverage for liability arising out of violations of federal copyright laws or the Lanham Act, which is supposed to be covered under the policy. (*Id.*) This argument is a red herring. Redbox does not seriously contend that the actual language in Exclusion (p) is ambiguous, so there is no need to compare competing constructions and determine hypothetical results. Coinstar agreed to the clear coverage bar contained in Exclusion (p). The Court must enforce the exclusion as written unless

---

[4] This same analysis applies to Redbox's argument-in-passing that "[t]he VPPA is not an electronic communication law, but rather a privacy protection statute." (Dkt. No. 22 at 15.) Exclusion (p) is not limited to "electronic communication laws." Regardless of how Redbox characterizes the VPPA, it nowhere disputes that the VPPA falls within the plain language of Exclusion (p)—that is, that the VPPA directly addresses the "sending, transmitting or communicating" of any material or information.

it is against public policy, and there has been no developed argument that application of Exclusion (p) to the VPPA would render the insurance coverage contract illusory or otherwise against public policy. *Cf. Quadrant*, 154 Wash. 2d at 181. Additionally, Redbox's argument is flawed. The Copyright Act and Lanham Act are not statutes that, like the VPPA, directly address and prohibit the sending, transmitting, or communicating of material or information *per se*. Nor does Redbox argue as much. Instead, it ignores this requirement in Exclusion (p) and points out that, in some cases of copyright or trademark infringement, the sending, transmitting, or communicating of material might occur. But such an argument misses the point: The exclusion refers to statutes that directly address such conduct. Redbox offers no support for its proposition that the Copyright Act or Lanham Act fall under this exclusion. Without a more developed argument on this point, the Court remains unpersuaded that it should ignore the clear language of Exclusion (p), to which Redbox's parent corporation agreed on multiple occasions.

Finally, Redbox asserts in passing that the Court's application of Exclusion (p) does not represent a fair, reasonable and sensible construction, and to accept the provision as "clear on its face" requires the Court to ignore "the policy as a whole, including the original exclusion being replaced[.]" (*Id.*) The Court disagrees. As explained herein, the language of the policy is unambiguous. It is Redbox's proffered interpretation that would be unfair, unreasonable, and non-sensible given that it ignores the actual exclusion to which National Union and Coinstar agreed and instead relies upon policy language not found in the governing exclusion, which if considered, would still not require the result Redbox requests. In sum, Redbox has not demonstrated any fair, reasonable, and sensible construction of the existing policy, which the Court finds to be clear and unambiguous. Exclusion (p) precludes coverage for Redbox's alleged breaches of the VPPA in the *Sterk* lawsuit.[5]

---

[5] Upon review, the Court denies Redbox's Rule 56(d) for a continuance to enable it to pursue additional discovery. (Dkt. No. 22 at 19.) In light of the ruling herein on a question both parties acknowledge is a "question of law," the Court sees no reason to defer ruling on this matter.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment (Dkt. No. 19) is GRANTED.

DATED this 28th day of February 2014.

John C. Coughenour
UNITED STATES DISTRICT JUDGE