THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, a
Pennsylvania Company,

              Plaintiff,

    v.

COINSTAR, INC., a Delaware Company;
REDBOX AUTOMATED RETAIL, LLC,
a Delaware Limited Liability Company,

              Defendants.

REDBOX AUTOMATED RETAIL, LLC,
a Delaware Limited Liability Company,

              Counterclaimant,

    v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, a
Pennsylvania Company,

              Counterdefendant,

No. 2:13-cv-01014-JCC

REDBOX'S RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

NOTED ON MOTION CALENDAR:
June 27, 2014

ORAL ARGUMENT REQUESTED

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC)
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

# I.    INTRODUCTION

In requesting full dismissal of Redbox's counterclaims, National Union Insurance

Company of Pittsburgh, PA ("NU") asks the Court to rule on four issues.  Motion at 5-6.  The

Court should answer these questions as follows, and deny NU's motion.

> 1. "Whether National Union's Distribution of Material in Violation of Statutes
>    exclusion bars coverage for the *Cain* claims when the *Cain* plaintiffs allege
>    Redbox violated the Video Rental Privacy Act [VRPA] by unlawfully disclosing
>    private customer information?"

On its face, the Court's previous ruling (Dkt. No. 25) interpreting this exclusion and thus

terminating NU's defense going forward of the underlying *Sterk* case arguably extends to NU's

ongoing defense of the statutory allegations in *Cain*.[1]  However, because NU wrongfully

manipulated the reservation of rights process to protect NU's own financial interests while

simultaneously ignoring Redbox's interests by not paying any invoices in *Cain* for the last 17

months, NU breached its duty to defend in bad faith and should be estopped from denying

coverage in *Cain* on the basis of the Violation of Statutes -- or any other -- exclusion.[2]

> 2. "Whether the *Mehrens* Lawsuit involves allegations of 'personal and advertising
>    injury' sufficient to trigger coverage under Coverage B to the National Union
>    policies?"

NU fails to mention that the plaintiffs in *Mehrens* alleged that Redbox "share[d] their

customer personal information databases with outside entities" and used personal information

"for marketing purposes."  *Mehrens* Complaint ¶¶ 59, 60.  The *Mehrens* plaintiffs thereby allege,

using the words of NU's insurance policies, a "publication" that allegedly "violates a person's

right of privacy."  Because there is a reasonable interpretation of the facts or law that could result

in coverage, NU must continue to defend *Mehrens* (if there are any further proceedings).[3]

---

[1] Redbox respectfully disagrees with the Court's ruling and incorporates its submission in opposition to
NU's previous motion for partial summary judgment, but Redbox does not seek reconsideration of that ruling here.

[2] NU does not address whether the exclusions in its Policy bar coverage for the unjust enrichment claim
asserted in *Cain* (a claim never made in *Sterk*).  *Compare Cain* Complaint ¶¶ 76-85 (Skinner Suppl. Decl. (Dkt No.
39), Ex. 1) *with Sterk* Second Amended Complaint (Gellert Decl. (Dkt. No. 23), Ex. 1).

[3] On June 6, 2014, the Ninth Circuit affirmed dismissal of the *Mehrens* claims on a ground that made
immaterial this allegation.  *Sinibaldi v. Redbox Automated Retail, LLC*, 2014 WL 2535471 at *1 n. 1 (9th Cir. June

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 1
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

3.  "Whether National Union's Knowing Violation of Rights of Another exclusion bars coverage for the *Mehrens* claims when the alleged violation of the Song-Beverly Credit Card Act necessarily requires proof that Redbox knowingly collected private customer information?"

This exclusion does not apply to the knowing collection of private information, ***unless*** such collection was done with "knowledge that [such] act would violate the rights of another." NU (which has the burden of proving application of its policy exclusions) has offered no evidence that Redbox had this knowledge, and both the district court and the Ninth Circuit have ruled as a matter of law that Redbox did not in fact violate the rights of the *Mehrens* plaintiffs.

4.  "Whether National Union is obligated to pay legal rates in excess of rates it typically pays for defense counsel in similar litigation, when it accepts the defense of Redbox subject to a reservation of rights?"

NU's motion fails to address the core issues presented by Redbox's counterclaims -- namely, whether NU has failed to fulfill its basic duty to defend Redbox.  NU did not timely communicate what rates it would pay counsel to defend Redbox; NU took months to reimburse Redbox on any submitted invoices and when it finally did it asserted deductions based on claimed application of "billing guidelines" that it never provided; and NU has failed entirely to pay Redbox on many invoices, some of which were submitted more than a year ago.  And, in any event, NU has failed to establish that the rates it has paid are those that it "typically pays for defense counsel in similar litigation."[4]

## II.     BACKGROUND

**A.     National Union Has Delayed at Every Turn in Defending Redbox.**

**1.     NU did not tell Redbox what rates it would pay for a year.**

NU agreed to defend Redbox against all four underlying actions - *Mehrens*, *Sterk*, *Holt* and *Cain* - under reservations of rights.  However, NU did not retain defense counsel for Redbox

---

6, 2014) ("our holding does not depend on what Redbox does with the information it collects").  Plaintiffs did not file a petition for rehearing challenging the Ninth Circuit's ruling by the deadline for same (June 20).

[4] Although not stated as an issue at the outset, NU also argues that a ruling in its favor on coverage renders Redbox's counterclaims for failure to pay defense expenses "moot."  Motion at 17.  This argument is frivolous.  *See*, supra, section III.C.1.

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 2
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

for any of the actions, nor indicate in any way that it intended to appoint counsel of its own choosing. Nor did NU tell Redbox the hourly rates that it "typically pays for defense counsel in similar litigation" -- the standard that it now contends is applicable to its obligation to reimburse Redbox for the counsel Redbox had retained -- even though that information was in NU's possession (assuming, as NU's arguments necessarily imply, NU has rates that it "typically" pays for "similar litigation" where these actions were filed). *See* Second Reyes Decl., Exhibits 1-4.[5]

NU took a full year to tell Redbox what rates it was willing to pay in defense of any of the cases. On September 5, 2012 -- literally one day shy of one year from when *Mehrens* was tendered to it -- NU advised Redbox of the rates it would pay on *Mehrens* and *Sterk*. Second Gellert Decl., ¶ 5, Exhibit 2. And for *Holt* and *Cain*, NU did not communicate what rates it was willing to pay for defense counsel until March and April 2013. Third Gellert Decl., ¶ 4.[6]

The rates that NU finally communicated to Redbox it was willing to pay turned out to be *identical* for all four underlying lawsuits, even though NU now characterizes the actions as "unrelated" (Motion at 4) and they were filed in four different jurisdictions.[7] No explanation was given for this fact or otherwise how these rates were determined. More importantly, NU has never explained how the arbitrary deductions to the fees and costs incurred by Redbox in its defense of the underlying class actions claims are reasonable or consistent with NU's "right and duty" to defend Redbox. NU contends that its seemingly arbitrary reductions are based on rates that NU "typically" has paid counsel to defend class action lawsuits in these jurisdictions. But,

---

[5] Redbox relies on the Declaration of Frederick Stein dated June 23, 2014 and filed herewith ("Stein Decl.") and the following previously filed declarations: Declaration of Nicholas Gellert (Dkt No. 30) ("Gellert Decl."); Second Declaration of Nicholas Gellert (Dkt. No. 41) ("Second Gellert Decl.") (there is a typographical error in this declaration; the word "not" should be removed from the last sentence); Third Declaration of Nicholas Gellert (Dkt. No. 43) ("Third Gellert Decl."); Declaration of Paul Philippe Reyes (Dkt. No. 33) ("Reyes Decl."); and Declaration of Paul Philippe Reyes (Dkt. No. 38) ("Second Reyes Decl.").

[6] NU also delayed in even responding to the tenders for three or four months in each case. For instance, *Mehrens* and *Sterk* were tendered on September 6 and October 24, 2011, respectively; NU accepted the defense of both on January 11, 2012. Second Gellert Decl., ¶ 5.

[7] Those rates are $240 for senior partners, $220 for junior partners, $183 for senior associates, $173 for junior associates; and $80 for paralegals. Third Gellert Decl., ¶ 4.

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 3
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

the only documents produced to date by NU in this litigation demonstrate that it does not even

have class action "panel" counsel in three of the four jurisdictions.  *See* Second Gellert Decl.,

Exhibit 1 (Bates No. NU000052 and NU000057).  California, Chicago and Detroit are not the

same.

### 2.   NU took almost a year to tell Redbox that it did not believe billing entries complied with its guidelines.

NU referenced "billing guidelines" in its January 2012 reservation of rights letters for

*Mehrens* and *Sterk* (as well as the reservation of rights letter it later sent for *Holt* and *Cain*).

Second Reyes Decl., Exhibits 1-4.  But it did not provide those "guidelines" to Redbox at that

time, or for more than another year.  Second Gellert Decl., ¶ 5.  And, in the meantime, NU

delayed almost a full year in telling Redbox that NU felt that defense invoice entries did not

comply with its "guidelines."  Third Gellert Decl., ¶ 7.

Redbox sent copies of its defense invoices to NU starting in June 2012, and updated these

submissions periodically thereafter.  Chartis/AIG had these invoices "audited" against its billing

guidelines, and received reports as early as October 8, 2012, that opined that many billing entries

were not in compliance with those guidelines.  Third Gellert Decl., ¶ 4.  But no "audit" reports,

or any other indication that the billing entries were not adequate, were provided to Redbox until

March 2013.  *Id.*  Two months later, on May 16, 2013, NU finally sent a copy of guidelines.  *Id.*;

*see also* Third Gellert Decl., Exhibit 1.[8]

In reliance on the audit reports (those provided March 8, 2013 and additional ones

thereafter), NU has refused to reimburse Redbox for a significant amount of its defense

expenses.  Third Gellert Decl., ¶¶ 7-8.  The vast majority of these reductions have been for

entries that the auditor contended were "vague" based on the auditor's interpretation of a

---

[8] The guidelines sent in May 2013 had just become effective on April 30, 2013.  On its face, they were not even the guidelines NU claims to have applied at the end of 2012.  NU still has not provided Redbox with the prior version of its guidelines on which its auditors apparently were relying.  Third Gellert Decl., ¶ 6.

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 4
72292-1023/LEGAL122322795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

guideline that simply states that "[o]verly generalized and vague billing entries will not be paid."
*Id.* These are just a few of the hundreds of entries that NU's auditor asserts were "vague":

> Emails re: possible Rule 11 motion (.1 hours by Dentons partner defending *Sterk*)
>
> Advice regarding class action discovery and opposition strategy (1.1 hours by Perkins Coie partner Tom Boeder in *Mehrens*)
>
> Telephone conference regarding strategy for appellate response; research rules for providing notice to Ninth Circuit regarding California Supreme Court action and emails regarding same (.9 hours by associate working on *Mehrens*)

*Id.,* ¶ 8.

### 3.     NU has simply failed to pay numerous invoices in their entirety.

Redbox has received no payment, or "audit" report, or any response for that matter, as to numerous invoices it has submitted to NU.  Most egregious is with respect to *Cain*, where Redbox has forwarded numerous invoices since February 2013, when NU accepted the defense under a reservation of rights.  In April 2013, NU sent an audit report covering one invoice, and it agreed to pay a small percentage of that one invoice.  Since then, NU has provided no response as to any of the other *Cain* defense invoices.  It has not paid for a single dollar of the *Cain* defense incurred after January *2013*.  Third Gellert Decl., ¶ 5.  The *Cain* invoices that NU has completely ignored total over $450,000.  Stein Decl., ¶ 9.

## III.     ARGUMENT

### A.     National Union Is Obligated to Defend *Cain*.

#### 1.     NU breached its coverage obligations by deserting Redbox in its defense of *Cain*.

On February 28, 2013, NU agreed to defend Redbox against the class action claims alleged in *Cain* under a reservation of rights.  Despite this promise, NU has failed completely in providing any defense support, including payment for any costs incurred since that date.  *See generally* Stein Decl.; Second Gellert Decl.; Third Gellert Decl.

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 5
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3        The duty to defend is independent from and broader than the duty to indemnify, and
4
5    requires the insurer to defend in a timely and complete manner.  *Truck Ins. Exch. v. Vanport*
6
7    *Homes, Inc.*, 147 Wn.2d 751, 760, 765, 58 P.3d 276, 281-82, 284 (2002) ("the defense must be
8
9    prompt and timely").  The Washington Supreme Court has repeatedly stressed the importance
10
     and significance of the defense obligation:
11
12               Insurance contracts are unique in nature and purpose.  An insured
13               does not enter an insurance contract seeking profit, but instead
14               seeks security and peace of mind though protection against
15               calamity.  The bargained-for peace of mind comes from the
16               assurance that the insured will receive prompt payment of money
17               in times of need.
18
     *National Surety Corp. v. Immunex Corp.*, 176 Wn.2d 872, 878, 297 P.3d 688, 690 (2013),
19
20   quoting *Love v. Fire Ins. Exch.*, 21 Cal. App. 3d 1136, 1148, 271 Cal. Rptr. 246 (1990).  *See also*
21
22   *Aerojet-General Corp. v. Transport Indemnity*, 948 P.2d 909, 922 (Cal. 1997) ("[T]o defend
23
24   meaningfully, [the insurer] must defend immediately, and to defend immediately, it must defend
25
26   entirely.")
27
28        Once the duty to defend is triggered, insurers "may not desert policyholders and allow
29
30   them to incur substantial legal costs while waiting for an indemnity determination."  *Truck Ins.*
31
32   *Exch*, 147 Wn.2d at 761, 58 P.3d at 282, citing *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 563,
33
34   951 P.2d 1124 (1998).  Yet, that is exactly what has happened here.  Facing the escalating costs
35
36   and risks of a class action claim, Redbox has been required to fund the entire defense (exceeding
37
38   $450,000 since February 2013) on its own.
39
40        NU had the option to deny coverage for *Cain* at its own peril or accept the defense (with
41
42   or without a reservation of rights).  Choosing the latter option, an insurer secures significant
43
44   benefits, including the ability to "insulate[] itself from potential claims of breach and bad faith,
45
46   which can lead to significant damages, including coverage by estoppel."  *Immunex*, 176 Wn.2d at
47
48   884-85, 297 P.3d at 693, citing *Truck Ins. Exch.*, 147 Wn.2d at 761, 58 P.3d at 282.  The
49
50   Washington courts have also recognized an insurer's right to defend under a reservation of right
51

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 6
72292-1023/LEGAL122332795.1

and seek declaratory relief regarding its coverage obligations.  But, the Washington Supreme Court soundly rejected the proposition that an insurer can defend under a reservation, seek declaratory relief to terminate its obligations and then recoup the defense costs that had been incurred.  *Immunex*, 176 Wn.2d at 885, 297 P.3d at 694 ("We reject National Surety's view that an insurer can have the best of both options: protection from claims of bad faith or breach without any responsibility for the costs of defense if a court later determines there is no duty to defend.")

Here, NU agreed to defend under a reservation of rights, but then paid essentially nothing for the defense incurred after its reservation.  For over 17 months, Redbox has incurred over $450,000 on its own to address the class action claims.  NU has breached its duty to defend.

## 2. NU's breach constitutes bad faith.

The Washington courts and legislature have repeatedly emphasized that "the business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."  *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386, 715 P.2d 1133, 1136 (1986), quoting RCW 48.01.030.  There is a fiduciary relationship between insurer and insured requiring an insurer to perform its obligations in good faith:

> [A]n insurance company's duty of good faith rises to an even higher level than that of honesty and lawfulness of purpose toward its policyholders: an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests.

*Tank*, 105 Wn.2d at 3886, 715 P.2d at 1136, quoting *Tyler v. Grange Ins. Ass'n*, 3 Wn. App. 167, 173, 177, 473 P.2d 193 (1970) (emphasis in original).

This is particularly important in the context of an insurer's duty to defend, where the insured depends upon the insurer for the peace of mind arising from the assurance that the defense of potentially covered claims will be prompt and fair.  NU manipulated this process in a way that favored its own financial interests to the detriment of its insured.  This is inconsistent

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 7
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

with controlling Washington law. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 414, 229 P.3d 693, 700-01 (2010), citing *Mutual of Enumclaw Ins. Co. v. T&G Construction, Inc.*, 165 Wn.2d 255, 269, 199 P.3d 376 (2008) ("In deciding whether to defend, an insurer may not put its own interest above that of its insured."); *Tank*, 105 Wn.2d at 391, 715 P.2d at 1139, quoting *Van Dyke v. White*, 55 Wn.2d 601, 611, 349 P.2d 430 (1960) ("Good conscience and fair dealing [require] that the company pursue a course that [is] not advantageous to itself while disadvantageous to its policyholder . . . .").

By agreeing to defend *Cain* under a reservation of rights, NU sought to insulate itself from the risks of breach. By failing to pay any costs for the last 17 months or otherwise provide any other support to Redbox in *Cain*, NU indisputably proved that it had placed its own interests ahead of those of its insured. *See, e.g., Tank*, 105 Wn.2d at 388, 715 P.2d at 1137 ("[A]n insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than for the insured's financial risk.")

By choosing to defend under a reservation, NU was required to promptly pay defense costs as they were incurred -- an unequivocal requirement under Washington law. NU attempted to shield itself from the consequences of a denial of coverage, but then deserted Redbox when it came time to perform. *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 392, 823 P.2d 499 (1992) ("The requirement of acting in good faith is meaningless if the insurer can protect itself from liability for bad faith simply by reserving its rights"). NU's words say one thing; its actions another. NU had no intention of defending the *Cain* lawsuit. Its actions can tell no other story.

NU's effort to have its cake and eat it too has caused real harm to Redbox. When an insurer accepts a defense, even under a reservation of rights, the policyholder secures the peace of mind in knowing that its reasonable costs of defense will be paid on an ongoing and timely basis (unless and until the court determines that the insurer's defense is no longer required). At a time when Redbox has faced a series of class action lawsuits attacking the core elements of its business -- namely, its model of marketing to and processing orders from customers -- NU has

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 8
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

failed to deliver that essential and bargained for peace of mind.  Stein Decl., ¶ 9.  NU repeatedly delayed communicating information to Redbox and then surprised it with low rates and vague guidelines.  And worse, it ignored the defense invoices that came across its desk.  Rather than peace of mind, NU delivered another front to Redbox's battles -- to get paid what NU initially promised to provide, and which the Supreme Court in *Immunex* held an insurer undeniably owed.

Redbox is engaged in an increasingly competitive business, where the technology relating to movie rentals is constantly evolving, and competitors offer alternatives to Redbox's products. The class action claims waged against Redbox, including *Cain*, divert resources that Redbox could put to value-creating activities.  Redbox was forced to divert over $450,000 unnecessarily to litigation since the beginning of 2013.  Stein Decl., ¶ 9.[9]

NU violated its duty of good faith as a matter of law.

### 3.    NU's exclusions are inapplicable to *Cain*.

Despite providing no defense support to Redbox in *Cain* for the last 17 months and not even seeking a declaration about whether it was obligated to defend *Cain* when it filed this lawsuit in 2013, NU now seeks to have the Court's February 2014 ruling relating to *Sterk* extended to *Cain*.  The circumstances should not be treated the same, and NU should not be permitted to terminate its coverage.

Where an insurer acts in bad faith in failing to defend, the Washington Supreme Court clearly authorizes coverage by estoppel as an appropriate remedy.  *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d at 564, 951 P.2d at 1128 ("Once the insurer breaches an important benefit of the insurance contract, harm is assumed, the insurer is estopped from denying coverage, and the insurer is liable for the judgment.")  Traditional contract damages are inadequate to compensate for an insurance company's actions in depriving an insured of the monetary and non-monetary

---

[9] In addition, NU's agreeing to defend Redbox has had implications for Redbox's dealings with its other insurers, and NU's failure to honor its defense obligations may unfairly prejudice Redbox with those other insurers. For instance, Redbox's umbrella carrier, which has a "drop down" obligation to defend Redbox in the event of no defense under NU's primary policy, has not provided such coverage, and Redbox might have addressed those other insurers differently in 2013, had NU not wrongfully manipulated its reservation of rights.  Stein Decl., ¶ 10.

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 9
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

components of insurance, including the benefits of a timely defense.  *Id.* at 560, 951 P.2d at 1126.

Here, NU has deliberately flaunted the clear and recent directives in *Immunex,* brazenly assuming that it could get around the Court's "no reimbursement" mandate by simply refusing to pay anything in the first place.  It is but another attempt to secure an "all reward, no risk" outcome that was flatly reject by that Court.  *See Immunex*, 176 Wn.2d at 885, 297 P.3d at 694. More importantly, it has had severe consequences to Redbox.  Instead of getting the type of timely payments that the policyholders in *Immunex* received as the insurers there argued their right to reimbursement, Redbox has received nothing.  Instead, it has been left to defend on its own for 17 months, paying over $450,000 of its own money, at a time when Redbox is facing multiple other class actions in different jurisdictions, as well as increased competition in the marketplace.

Whether or not the Violation of Statutes exclusion or any other exclusion within the NU Policies might later be determined to apply is irrelevant under the circumstances here, and the courts have specifically recognized that this will not excuse an insurer for its bad faith conduct. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 131, 196 P.3d 664 (2008) ("in the third party context, an insurer can act in bad faith even where coverage is later determined to be unavailable").  *See also Kirk*, 134 Wn.2d at 563-64, 951 P.2d at 1127; *Butler*, 118 Wn.2d at 392-93, 823 P.2d at 505.

The Washington Supreme Court has determined that an estoppel remedy is particularly important in situations, like here, where the insurer's bad faith seeks to establish a dangerous precedent threatening other policyholders in the future:

> Without coverage by estoppel and the corresponding potential liability, an insurer would never choose to defend with a reservation of rights when a complete failure to defend, even in bad faith, has no greater consequence than if such refusal were in good faith.  The requirement of acting in good faith cannot be rendered meaningless.

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 10
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*Kirk*, 134 Wn.2d at 565, 951 P.2d at 1128.  Such a remedy creates a strong incentive for the

insurer to act in good faith, and protects the insured and other insureds against this type of bad

faith conduct.  *Id.* at 564, 951 P.2d at 1128; *Butler*, 118 Wn.2d at 394, 823 P.2d at 506.

       NU's efforts to invoke the Court's earlier *Sterk* order to protect it against its bad faith in

*Cain* should be rejected as the exclusions relevant to coverage no longer apply.  *Onvia*, 165

Wn.2d at 132 ("a third-party insured has a cause of action for bad faith claims handling that is

not dependent on the duty to indemnify, settle, or defend").

       NU's motion for summary judgment on *Cain* should be denied.

**B.**    **National Union Should Not Be Excused from Continuing to Defend *Mehrens*.**

       **1.**    **NU erroneously argues that the *Mehrens* plaintiffs did not allege publication of the personal identification information.**

       NU is simply wrong in arguing that "there are no specific allegations [in *Mehrens*] of an

oral or written publication of [the] purported personal identification information."  Motion at

13:16-17.  Yes, the two paragraphs from the complaint that NU selectively chooses to quote do

not allege any publication (Motion at 13), ***but other paragraphs do***:

> Upon information and belief, Defendants use the ZIP codes
> collected during the checkout process for marketing purposes . . . .
>
>     \*       \*       \*
>
> Defendants share their customer personal information databases
> with outside entities. . . .
>
>     \*       \*       \*
>
> In addition, Defendants profit by sending "marketing information
> on behalf of one of [Defendants'] business partners about products
> or services they provide . . ." to its customers using the personal
> identification information collected during credit/debit card
> transactions. . . .

First Amended Complaint, ¶¶ 49, 59, 60 (Skinner Suppl. Decl. (Dkt. No. 39), Exhibit 2).

       The duty to defend arises at the time an action is first brought, and is based on the

"potential for liability."  *Truck Ins. Exch.*, 147 Wn.2d at 760, 58 P.3d at 281.  The duty is

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 11
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

triggered if the insurance policy "***conceivably covers*** allegations in the complaint."  *Am. Best Food*, 168 Wn.2d at 404, 229 P.3d at 696, citing *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53, 164 P.3d 454 (2007) (emphasis in original).

The breadth, extent or manner of the alleged "marketing" by Redbox, "sharing" of information with outside entities, and "sending" of marketing information to customers was not elaborated upon in the *Mehrens* complaint.  For purposes of evaluating NU's duty to defend, therefore, this allegation must be given a broad interpretation.  *See, e.g., Truck Ins. Exch.*, 147 Wn.2d at 760, 58 P.3d at 281 (underlying complaint must be liberally construed).  There are no other allegations or evidence in the record that clearly define plaintiffs' contentions, and whether they refer to mass publication in newspapers or other media, targeted mailers, or any other form of marketing. [10]  Redbox was successful in moving to dismiss the *Mehrens* complaint in the U.S. District Court for the Central District of California, and upholding that dismissal at the Ninth Circuit.  So, unless and until the pleadings are modified, or the factual record were developed on a remand, NU has no basis for terminating its duty to defend.

**2.    The Knowing Violation of Rights of Another exclusion does not defeat coverage for *Mehrens*.**

An insurer has the burden of establishing the application of an exclusionary provision. *See Aetna Ins. Co. of Hartford v. Kent*, 12 Wn. App. 442, 447, 530 P.2d 672, 675 (1975) ("the burden is upon the insurer to prove that the loss brought about by an occurrence is not covered because of exclusionary provisions in the policy").  Exclusions are strictly construed against the insurance company, and in favor of coverage.  *Washington Public Utility Dists. v. PUD No. 1*, 112 Wn.2d 1, 16-17, 771 P.2d 701, 710 (1989); *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn.

---

[10] But even if the sharing was modest in scope, it still qualifies as a "publication" under the language of the policy. *See* Skinner Decl. (Dkt. No. 20), Exhibit B at NU 150 ( "personal and advertising injury" extends to "[o]ral or written publication, ***in any manner***, of material that violates a person's right of privacy.") (emphasis added). *See Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307 (Ill. 2006) (transmission of a single fax to a single recipient constitutes "publication").

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 12
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

App. 335, 342, 983 P.2d 707, 711 (1999).  NU has not met its burden of establishing that the

Knowing Violation of Rights of Another exclusion is applicable to bar coverage for *Mehrens*.

The full text of the "Knowing Violation of Rights of Another"  exclusion reads as follows

> **Knowing Violation of Rights of Another**
> "Personal and advertising injury" caused by or at the direction of
> the insured with the knowledge that the act would violate the rights
> of another and would inflict "personal and advertising injury"

Skinner Decl. (Dkt. No. 20), Ex. B (at NU 028).

Under the plain language of the exclusion, NU must prove that Redbox knew that its acts

would violate the rights of another, and that there are no circumstances under the *Mehrens*

complaint for which Redbox could be liable in the absence of such knowledge.  NU cannot

establish these elements.  That Redbox "intentionally" gathered information from consumers

who rented movie DVDs from Redbox kiosks does not by itself trigger the NU exclusion.

All the *Mehrens* complaint alleges is that Redbox intentionally collected personal

consumer information, which it then used for marketing purposes.  There is no allegation that

Redbox knew that collecting such information violated consumer rights.  On the contrary, the

plaintiffs allege that all that is required under the Song-Beverly Act to establish liability is that

Redbox have intentionally gathered personal information.  There is no allegation -- or

requirement under the Song-Beverly Act -- that Redbox have known at the time it was

intentionally gathering information from consumers at Redbox kiosks that this would violate

consumers' privacy rights.  Without that critical allegation and requirement under the Song-

Beverly Act, NU cannot establish application of the "knowing violation of rights" exclusion.

**C.     Redbox Is Entitled to Seek Judgment from National Union for Defense Costs for Which National Union Has Failed to Reimburse Redbox.**

**1.     NU's mootness argument is frivolous.**

Without providing the Court with any authority, NU argues that all of Redbox's

counterclaims would be rendered moot if the Court agrees with it that NU "has no duty to defend

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 13
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Redbox in the underlying lawsuits." Motion at 17. NU's position, however, is directly contrary to controlling authority. Thus, not only is NU's argument non-persuasive, it is frivolous.

The Washington Supreme Court has very plainly held, "after obtaining a declaration of noncoverage, an insurer 'will not be obligated to pay' *from that point forward*." *Immunex*, 176 Wn.2d at 885, 297 P.3d at 694 (emphasis in original). The court explained that any other outcome would make the promise to provide a defense illusory. *Id.* at 885-86, 297 P.3d at 694 ("Any other rule would be at odds with our observation that, under a reservation of rights defense, 'the insured *receives* the defense promised'-at least until the determination of noncoverage."), quoting *Kirk*, 134 Wn.2d at 563 n.3, 951 P.2d at 1127 n.3 (emphasis added in *Immunex*).

NU agreed to defend Redbox in each of the underlying actions pursuant to reservations of rights. This was a strategic decision by NU for which it benefitted as a matter of law. *Immunex*, 176 Wn.2d at 880, 297 P.3d at 691 ("an insurer unquestionably benefits from its decision to defend under a reservation of rights" even when there might be a later finding that it owes no duty to continue that defense). As the Supreme Court pointed out in *Immunex*, if NU was confident in its coverage position, it could have elected to refuse to provide this coverage. *Id.* at 887, 297 P.3d at 695 ("An insurer is not forced to undertake a defense if it believes the claims asserted against the insured are not covered at all.") Having made the choice it did, NU is not permitted to then refuse to pay for the costs of the defense incurred by Redbox up to the point when it is determined that a defense was not required. Again, *Immunex* makes this clear. "Here, however, [Immunex's insurer] *did* choose to defend Immunex, following the reservation of rights approach our precedent allows. It cannot claim the benefits of doing so and simultaneously avoid the costs." *Id.*, 297 P.3d at 695 (emphasis in original).

As to *Sterk*, NU is obligated to pay Redbox's costs of defense up to the Court's February 28, 2014, ruling on NU's prior partial summary judgment motion. *Holt* was fully litigated without any determination that a defense was not owed, so NU must reimburse Redbox for the

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 14
72292-1023/LEGAL122332795.1

costs of defense throughout that action.  And even if the Court were to rule that NU is not

obligated to defend *Mehrens* and *Cain*, NU must still pay for the costs of Redbox's defense up

until the Court renders that decision.  In short, Redbox's counterclaims for NU's failure to honor

its defense obligations remain viable regardless of the Court's rulings on the coverage issues for

*Mehrens* and *Cain*.

> **2.      Whether or not NU has failed to pay the past fees and costs incurred in
> connection with Redbox's defense of the *Sterk*, *Mehrens*, *Holt* and *Cain* class
> actions is a question of fact.**

NU argues in its motion that the "relationship between National Union and Redbox is

defined by the National Union Policies issued to Coinstar."  Motion at 18:3-4.  The insuring

agreements within the National Union Policies state that

> [NU] will have the right and duty to defend the insured against any
> "suit" seeking . . . damages [because of "personal and advertising
> injury"].

Motion at 18:10-12.

There is no provision within the policies, however, discussing, addressing or even

mentioning the term "panel counsel" or otherwise limiting NU's defense obligation to any

particular billing rate or amount.[11]  In the absence of an actual policy provision, NU's duty to

defend Redbox is based on reasonableness, and the courts routinely evaluate whether defense

fees and costs are "reasonable and necessary" in coverage disputes.  *See, e.g., Immunex*, 176

Wn.2d at 887-88, 297 P.3d at 695 (insurer "may be held responsible for the reasonable defense

costs incurred by its insured until the trial court determined [the insurer] had no duty to defend");

*Weyerhaeuser v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 689, 15 P.3d 115 (2000) (court

---

[11] Some policies include specific provisions or endorsements that set maximum billing rates or other
guidelines, as NU readily acknowledges.  *See* ReyesDecl., ¶ 10 (suggesting that Coinstar could have sought a
"different policy" that specified rates).  The NU policies contain no such provision.  *Boeing v. Aetna Cas. & Sur.
Co.*, 113 Wn.2d 869, 887,784 P.2d 507, 516 (1990)  (the insurance industry "knows how to protect itself and knows
how to write exclusions and conditions"); *Lynott v. National Union*, 123 Wn.2d 678, 688, 871 P.2d 146, 151 (1994)
("in evaluating the insurer's claim as to meaning of language used, courts necessarily consider whether alternative,
more precise language, if used, would have put the matter beyond reasonable question"), quoting 13 J. Appleman,
*Insurance Law & Practice* §7403 (1976).

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 15
72292-1023/LEGAL122332795.1

affirmed trial court's order requiring insurer to pay insured's "reasonable defense costs).  *See also Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal.4th 38, 61 n.13, 948 P.2d 909, 922 n.13 (1997) ("defense costs, i.e., expenses to avoid or at least minimize liability, are not limited by the policy, expressly or otherwise, but impliedly extend to all such expenses as are *reasonable* and *necessary*") (emphasis added).

The fees and costs incurred in connection with the defense of the underlying *Sterk*, *Mehrens*, *Holt*, and *Cain* class actions were reviewed by experienced in-house counsel for Redbox, and determined to be reasonable, necessary and appropriate.  *See* Stein Decl., ¶¶ 4, 7, 11, 12.  The counsel defending Redbox in *Sterk* and *Cain* -- Dentons -- is the same counsel that NU has used in defending itself or other affiliates of NU controlled by the American International Group (AIG).  Stein Decl., ¶ 8.[12]  Redbox reasonably believed that NU would not pay Dentons a different rate when it defended an AIG insurer than it paid Dentons when it was defending Redbox.  *Id.*

To the extent that NU believes that the costs incurred by defense counsel in the underlying matters is not reasonable -- which it has apparently done here in severely limiting the amount NU has reimbursed -- that is a question of fact precluding summary adjudication of that issue alleged in Redbox's counterclaim.  *Arch Ins. Co. v. Scottsdale Ins. Co.*, 2010 WL 4365817 (W.D. Wash. Oct. 27, 2010), citing *Schmidt v. Cornerstone Inv., Inc.*, 115 Wn.2d 148, 795 P.2d 1143, 1153 (1990) ("whether attorneys' fees are reasonable under specific circumstances is a question of fact" and concluding that reasonableness of defense expenses could not be determined on summary judgment).  Discovery is ongoing in this case, and Redbox has outstanding written discovery and deposition notices seeking information directly relevant to this issue.  *See* briefing on pending discovery motions (Dkt. Nos. 28 & 31).

---

[12] *See also* http://www.dentons.com/en/robert-johnson (former chair of Dentons litigation practice acknowledging on biography that his clients include Chartis).

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 16
72292-1023/LEGAL122332795.1

### 3.     NU's contention that it has the unfettered right to control Redbox's defense is neither relevant nor accurate.

NU contends that it has the right to unilaterally and arbitrarily limit billing rates and costs because it has the right to select defense counsel even if it defends under a reservation of rights. Motion at 19.  Whether or not NU has the right to appoint counsel after it issues a reservation of rights -- *see, e.g.*, *Johnson v. Continental Cas. Co.*, 57 Wn. App. 359, 788 P.2d 598 (1990) -- is not an issue in this litigation.  It is undisputed that NU did not seek to appoint defense counsel for any of the four underlying class actions.  As such, NU's suggestion that "controlling" the defense and arbitrarily setting any rate for defense counsel that it wants -- no matter how low -- are somehow the same, is simply not supported by the policy or the case law.  Rather, NU is still required to pay reasonable defense costs, which is a question of fact, and not subject to summary adjudication.

Ironically, NU argues -- after a lengthy block quote from *Johnson*, citing from the holding in *Tank* -- that "[t]here is no rule in Washington that would allow an insured, such as Redbox, to dictate how the defense was to be conducted or how much defense counsel was to be paid by the insurer."  Motion at 20.  NU's argument was rejected emphatically by both *Johnson* and *Tank*.

*Tank* and *Johnson* make abundantly clear that NU cannot improperly direct defense counsel, as defense counsel's only client given NU's reservation of rights is Redbox.  The block quote that NU provides from Johnson includes this key language:  "the attorney must understand that he represents the insured, not the [insurance] company."  *Johnson*, 57 Wn. App. at 362, 788 P.2d at 600.  *See also id.*, 788 P.2d at 600 ("both retained defense counsel and the insurer must understand that only the *insured* is the client.") (emphasis in original).  But glaringly missing from NU's block quote is the footnote to this important point, wherein the *Johnson* court reiterated that this key holding from *Tank* derives from defense counsel's ethical responsibilities. The missing footnote reads:  "As the *Tank* court noted, this obligation stems from an attorney's

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 17
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:   206.359.9000

obligation under RPC 5.4(c) not to 'permit a person who recommends, employs, or pays the lawyer to render legal services for another to *direct* or regulate the lawyer's professional judgment in rendering such legal services.' *Tank* 105 Wash.2d at 388, 715 P.2d 1133. *See also* RPC 1.8(f)." *Johnson*, 57 Wn. App. at 362 n.3, 788 P.2d at 600 n.3 (emphasis added).  In Washington, therefore, not only is there a rule that allows Redbox to dictate how the defense is conducted, the rule in Washington is that *only* Redbox may dictate to defense counsel.

Thus, any limitations placed on counsel that could affect the independent obligations of the attorney to his or her client are subject to the strictest scrutiny by the court.  NU's limitations on Redbox's defense counsel remain subject to the Court's review.

Likewise, as reflected in the block quote from *Johnson* provided in NU's brief, one of the key elements of *Tank* is that an insurer defending under a reservation of rights "must refrain from any activity that would show a greater concern for its monetary interest than for insured's financial risk." *Johnson*, 57 Wn. App. at 362, 788 P.2d at 600.  NU has an obligation to give "equal consideration *in all matters* to the insured's interests." *Tank*, 105 Wn.2d at 386, 715 P.2d at 1136 (emphasis in original).  NU's suggestion that it has unfettered discretion as to how much it will pay defense counsel is contrary to this key element of *Tank* and *Johnson*.  Defense counsel cannot be constrained by NU with respect to such things as what steps to take and when, what attorneys or other professionals take each step, or what must be communicated to NU about the defense.  Nor may NU show greater concern for its own monetary interests by agreeing to pay hourly rates for defense counsel defending its insureds in matters core to their businesses dramatically lower than what it pays counsel defending NU even in less high-stakes matters.  Put differently, if NU hired (and paid) counsel to defend NU of such caliber that those counsel commanded rates of $410 per hour in 2002, *see* Gellert Decl., ¶ 13, NU most definitely is putting its own interests above those of Redbox by suggesting that Redbox should be satisfied with counsel that can only command rates capped at $240 per hour in 2012. *Tank* and *Johnson* give

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 18
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Redbox the right to demand that NU pay for the same caliber of attorneys as NU hires for itself.[13]

### 4. NU cannot rely on rates it delayed communicating to Redbox, at least not retroactively.

NU takes the position that what Redbox actually has paid counsel is irrelevant, asserting that its only obligation is to pay for counsel at rates that NU typically pays for counsel to defend actions like the underlying actions filed against Redbox. However, when responding to Redbox's tenders, it did not communicate those "typical" rates to Redbox. Instead, it delayed a considerable period of time under the guise of asking of Redbox what previously retained counsel was charging.[14]

When NU ultimately communicated what rates it was willing to pay for defense of *Sterk* and *Mehrens* -- on September 5, 2012 -- NU stated that those rates were based on what it typically pays, but provided no indication how that was determined. In short, there is absolutely no reason that NU could not have communicated those rates to Redbox in a timely response to the tenders of these matters, or at least when it sent its January 11, 2012, reservation of rights letters. By the time that NU finally communicated what rates it was willing to pay on *Sterk* and *Mehrens*, Redbox had already incurred over $840,000 defending *Sterk* alone.[15]  Second Gellert Decl., ¶ 5.

---

[13] *Griffin v. Allstate Ins. Co*., 108 Wn. App. 133, 29 P.3d 777 (2001), on which NU also seeks to rely (Motion at 22), is equally unhelpful to NU. In *Griffin*, the court held that an insurer must reimburse for defense expenses incurred prior to tender to the insurer, unless the insurer proves it was actually and substantially prejudiced by not receiving tender earlier. The court recognized that one potential way an insurer might be prejudiced is if it was denied the ability to retain counsel at lower rates than its insured was paying. *Id*. at 141, 29 P.3d at 782. Here, first of all, NU has not asserted that it received late notice or that it has been prejudiced by the timing of notice in any way. And, equally important, in response to receiving notice, NU elected not to retain counsel to defend Redbox. Instead, it waited several more months to belatedly tell Redbox that it would only reimburse defense expenses at very low rates. The party prejudiced here is Redbox, not NU.

[14] As discussed in pending discovery motions, NU has retained counsel at Dentons to defend NU, and thus at least had knowledge of what that firm charged NU when it made inquiry of Redbox what Dentons was charging for defense of *Sterk*.

[15] By the end of August 2012, Redbox had forwarded NU for reimbursement invoices for all services in defense of *Sterk* through July 2012 and *Mehrens* through June 2012. Redbox periodically sent updates to NU with additional invoices thereafter.

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 19
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

By the time that NU advised what rates it was willing to pay on *Holt* -- on March 8, 2013 (almost a year after NU agreed to defend Redbox) -- essentially all of Redbox's defense expenditures had already been made.  Redbox's ultimately successful motion to dismiss had been fully presented to the court.  After dismissal was granted in June 2013, the plaintiffs in *Holt* did not seek further consideration or file an appeal.  Stein Decl., ¶ 12.

For *Cain*, NU communicated the rates it was willing to pay in April 2013, and thus two months after it accepted Redbox's tender of defense of that case under a reservation of rights. Combined with NU's delay in accepting the tender, *see* Stein Decl., ¶ 5, several months passed before NU told Redbox the rates it was agreeing to pay to defend.  However, as discussed above, NU has failed to fulfill its obligation to defend altogether to the substantial detriment of Redbox, paying no portion of all but the first of the many invoices that have been submitted to NU for payment, representing over $450,000 in costs for work since January 2013.  Stein Decl., ¶ 9.

NU should be obligated to reimburse Redbox at the actual rates charged by Redbox's counsel *at least* up to the date when NU communicated that rates it was offering to pay on each matter.  NU instead, without any justification or even explanation, has imposed its low rates retroactively.

### 5.     NU has not even established that the rates at which it has reimbursed Redbox are the rates it typically pays or would be able to hire counsel.

NU has resisted discovery directed at how NU determined the rates it has communicated it is willing to pay for the four underlying actions, which just happen to be identical although the actions are in four separate jurisdictions.  And NU's submission in support of its summary judgment motion appears carefully worded to avoid any representation that the rates that NU has agreed to pay to Redbox are at the level that NU would have been able to retain "panel" counsel.

Redbox has a right to be defended by counsel competent in the type of cases it faces. [16] One commonality among the four underlying actions (other than the fact that Redbox was a

---

[16] NU's own belatedly provided "guidelines" recognize that experience with the type of issues a case presents is an important consideration in retaining counsel.  *See* 2013 Guidelines at 11 ("AIG Property Casualty

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 20
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

defendant) is that each was filed as a putative class action.  However, the "rate sheets" produced by NU (the only evidence NU has produced to date about its "panel" rates) demonstrate that NU does not have a "panel" firm for class actions in three of the four jurisdictions where the underlying cases were filed.[17]  *See* Second Gellert Decl., Exhibit 1 (Bates No. NU000052 and NU000057).

In short, even if NU's only obligation were to pay the rates at which it would have been able to hire "panel" counsel, NU has not met its burden of demonstrating that it has done so. Even if NU had presented testimony that it had in fact paid Redbox at rates it would have been able to hire competent, class action defense counsel, Redbox should be entitled to cross-examine that testimony.  But that testimony has not been provided to the Court or Redbox, and NU has resisted Redbox's efforts to conduct discovery into these issues.  At a minimum, before the Court rules on whether the rates NU has so far agreed to pay match what it in fact typically pays for actions like the underlying actions, Redbox should be entitled to conduct reasonable discovery. If not denied outright, this aspect of NU's motion should be continued pursuant to Fed. R. Civ. P. 54(d) until Redbox has had opportunity to receive the discovery that is the subject of the pending discovery motions.

### 6.    NU has presented no evidence to support the reductions it has made to defense invoices based on non-compliance with billing guidelines.

NU's reductions of legal invoices for claimed failure to follow NU's "billing guidelines" is also at issue in the counterclaims.  NU's "audit" reports (first provided in March 2013) make reference to "guidelines" that NU apparently was using then, but NU has never provided those guidelines to Redbox.  Redbox's defense counsel cannot have been expected to comply with

---

retains counsel by specialty; therefore, we expect counsel to be well versed and current with the laws and procedures relative to that specialty."), Third Gellert Decl., Exhibit 1.  In California, counsel retained to defend insureds must have "at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation."  Cal. Civ. Code Sec. 2860(c).

[17] That NU has a "panel" firm in one of the jurisdictions demonstrates that NU recognizes that not all counsel are appropriate to defend class actions. *Cf., e.g., Linney v. Cellular Alaska*, 151 F.3d 1234, 1239 (9th Cir. 1998) (Rule 23 adequacy extends to counsel); *Young v. Magnequench Int'l.*, 188 F.R.D. 504, 508 (S.D. Ind. 1999).

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 21
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

guidelines that NU did not bother to provide.  And NU should not be permitted to take deductions from invoices based on guidelines it never provided.

The only guidelines that NU has provided -- guidelines effective on April 30, 2013, and forwarded to Redbox in May 2013 -- demonstrate that NU should not be permitted to dictate that Redbox's counsel comply with these guidelines.  As discussed above, defense counsel's only client is the policyholder, not the insurer as well, in the context of a defense under a reservation of rights.  *Tank*, 105 Wn.2d at 388, 715 P.2d at 1137 ("Both retained counsel and the insurer must understand that only the *insured* is the client.") (emphasis in original).  Yet, the "billing guidelines" provided to Redbox in May 2013 contain numerous purported obligations that, if implemented without modification, could violate the policyholder's attorney-client relationship with its counsel.  *E.g*., Guidelines at 11 (purporting to require defense counsel to provide research results), Third Gellert Decl., Exhibit 1.  More fundamentally, the guidelines seek to impose restrictions on what steps or efforts may be undertaken, at least without the prior consent of the insurer, thereby interfering with the relationship between client and counsel.  In addition, the guidelines make reference to keeping "Company Information" (an undefined term) from "unauthorized access."  Guidelines at 4.  This raises the prospect that counsel, to comply with these guidelines, is to keep from his client information about the insurer that might be material to that counsel's client (the policyholder).

The majority of reductions asserted by NU are for allegedly vague billing entries.  The irony is that the billing guidelines themselves are impossibly vague as to what level of specificity must be contained in any particular entry.  The guideline provides that "[o]verly generalized and vague billing entries will not be paid."  Third Gellert Decl., ¶¶ 7-8.  It provides no further detail as to what level of information needs to be in a billing entry to avoid being too "generalized" or what NU might consider to be a "vague" entry.  NU's auditor's attempt to apply this guideline to Redbox's defense counsel's invoices demonstrates that invoice entries that one would typically see in a legal invoice were deemed "vague" and not paid.  For instance, NU's auditor's asserted

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 22
72292-1023/LEGAL122332795.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

that an entry that described that Perkins Coie partner Tom Boeder spent 1.1 hours in *Mehrens* giving "[a]dvice regarding class action discovery and opposition strategy" was too imprecise for the auditor's tastes and that he would not approve payment of an associate who spent .9 hours in *Mehrens* described as: "Telephone conference regarding strategy for appellate response; research rules for providing notice to Ninth Circuit regarding California Supreme Court action and emails regarding same." Third Gellert Decl., ¶ 8.

Finally, NU had ample opportunity to notify Redbox that it believed defense counsel's invoices were insufficient. Once again, however, NU failed to act in a timely fashion. Redbox had provided invoices to NU starting in June 2012. By October 2012, NU had received "audits" that asserted that entries on these invoices were too vague and that NU should take reductions based on this opinion. *Id.*, ¶ 4. NU delayed until March 2013 in passing this information on to Redbox. *Id.* Not only are the guidelines themselves vague, but NU failed to inform Redbox how NU was going to apply them. NU's game of "gotcha" just adds to the unfairness of imposing unilateral guidelines in the first place.

The standard for defense bills is not whether they meet some arbitrary level of completeness imposed by an insurer. Redbox is entitled to demonstrate that its defense counsel's billings were adequate and that its defense expenses were reasonable.

## IV.   CONCLUSION

NU's motion fails to acknowledge in any way that a significant number of defense invoices have never been paid, including nearly every invoice (over $450,000) relating to the defense of *Cain*. The only excuse offered for its handling of these invoices is that the issue is somehow "moot" -- that a later finding of no coverage moots Redbox's effort to get paid. NU's audacity is beyond belief, as it flies in the face of clear, contrary Washington Supreme Court authority issued a mere 90 days before NU filed its complaint. The *Immunex* decision unequivocally held that an insurer cannot accept the benefit of agreeing to defend under a reservation of rights without satisfying its obligation to actually provide that defense.

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 23
72292-1023/LEGAL122332795.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

NU's bad faith conduct -- promising a timely defense for *Cain* but then refusing to deliver -- should not go without notice.  The remedy for such actions is clear:  NU should be estopped from denying any coverage for *Cain*.

To the extent any further proceedings are even possible for *Mehrens* -- which seem very unlikely given that plaintiffs have not sought rehearing of the Ninth Circuit's ruling affirming dismissal -- NU should be required to defend, as it has failed to establish that the *Mehrens* allegations, liberally construed in Redbox's favor, cannot conceivably provide coverage under the NU policies.

Finally, even if NU is correct and the defense of *Cain* and *Mehrens* can now be terminated, Redbox's counterclaim recovery is not so limited.  NU's delay in providing information on the rates it deems appropriate, in providing its billing guidelines, and in providing Redbox with its analysis of the invoices against those guidelines prevent NU from making arbitrary reductions to the invoices.  But more fundamentally, NU has not even proven that Redbox's counterclaims for underpayment of its defense bills can be defeated under its view of the applicable standards.  Nowhere has it established that the rates it has applied are the rates it would have paid if it had retained counsel (which it did not) or that the invoice entries it has rejected were out of compliance with its own vague guidelines.  NU's handling of the defense raises far more questions than answers.   NU's motion for summary judgment should be respectfully denied.

RESPECTFULLY SUBMITTED this 23rd day of June, 2014.

s/ Nicholas P. Gellert
    Nicholas P. Gellert, WSBA No. 18041
Email:  NGellert@perkinscoie.com

s/ John S. Rossiter, Jr.
    John S. Rossiter, Jr., WSBA No. 23876
Email:  JRossiter@perkinscoie.com

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone:  206.359.8000
Facsimile:  206.359.9000

Attorneys for Defendant/Counterclaimant
Redbox Automated Retail, LLC

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 25
72292-1023/LEGAL122332795.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46
47
48
49
50
51

### CERTIFICATE OF SERVICE

I certify that on June 23, 2014, I electronically filed the foregoing Defendant Redbox's Response to Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following attorney of record below via the ecf system:

> Stephen G. Skinner
> Andrews Skinner
> 645 Elliott Avenue W., Suite 350
> Seattle, WA  98119-3911
> Email:  Stephen.skinner@andrews-skinner.com

I certify under penalty of perjury that the foregoing is true and correct.

DATED this 23rd day of June, 2014.

s/ Nicholas P. Gellert
Nicholas P. Gellert, WSBA No. 18041

Attorney for Defendants

REDBOX'S RESPONSE
TO MOTION FOR SUMMARY JUDGMENT
(NO. 2:13-CV-01014-JCC) – 26
72292-1023/LEGAL122332795.1