THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania Company,<br><br>Plaintiff,<br><br>v.<br><br>COINSTAR, INC., et al.,<br><br>Defendants. | CASE NO. C13-1014-JCC<br><br>ORDER |

This matter comes before the Court on Defendant/Counterclaimant's motion to compel, (Dkt. No. 28), and National Union's motion for a protective order barring a Rule 30(b)(6) deposition. (Dkt. No. 31.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion to compel and DENIES the motion for a protective order for the reasons explained herein.

I.   BACKGROUND

This is a declaratory judgment action in which Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") seeks a declaration that it has no duty to defend or indemnify Defendant Redbox Automated Retail, LLC ("Redbox") for the class action lawsuit captioned *Sterk v. Redbox Automated Retail, LLC*, Case No. C11-1729 (N.D. Ill. 2011). Redbox

ORDER
PAGE - 1

is a wholly-owned subsidiary of Defendant Coinstar, Inc.,[1] which is listed as the insured in multiple Commercial General Liability Insurance policies issued by National Union. Redbox tendered a claim to National Union after it was sued in the United States District Court for the Northern District of Illinois for violations of the Video Privacy Protection Act ("VPPA") ("*Sterk* lawsuit"). (Dkt. No. 19 at 2–3.) National Union agreed to defend Redbox subject to a reservation of rights and subsequently commenced this insurance coverage declaratory judgment action. (*Id*.) On February 28, 2014, the Court granted partial summary judgment to Plaintiff, finding that the relevant provision of the contract precluded coverage for Redbox's alleged violations of the VPPA in the *Sterk* lawsuit, and Plaintiff did not need to reimburse or indemnify Redbox for the alleged violations of the VPPA.

Defendants filed several counterclaims, in which they sought coverage for three other lawsuits raising issues similar to those at issue in relation to the *Sterk* lawsuit. (Dkt. No. 15 at 6–9.) In addition, Defendants argue that National Union breached the insurance contracts by applying "a single rate cap structure to all defense counsel retained to defend Redbox." (Dkt. No. 15 at 9.) In effect, Defendants argue that National Union is improperly limiting the amount that it will pay counsel defending Defendants in the underlying claims.

In order to determine whether National Union acted in good faith in setting the relevant rates, Defendants move to compel certain information. First, Defendants move to compel information regarding how National Union decides what rates to pay counsel defending the defendants in the underlying actions.[2] Second, Defendants move to compel information

---

[1] Coinstar is now known as Outerwall, Inc. The Court refers to "Coinstar" in this order based on the parties' briefing and the fact that Coinstar is listed in the relevant insurance policies.

[2] <u>Interrogatory 4.b</u>: that National Union identify each person with knowledge relating to "your assertions as to what constitutes reasonable rates for attorneys and other legal professionals handling defense of each of the underlying actions" and "for each person so identified" state the facts believed to be known by that person on the issue. (Dkt. No. 30, Ex. A at 9.)

<u>Request for Production 5</u>: That National Union produce each document in its possession that "refers to or relates to [National Union's] investigation(s) or response(s) to Redbox's tender of coverage for each of the underlying actions." (Dkt. No. 30, Ex. A at 15.)

regarding what National Union pays its attorneys to represent itself.[3] The parties were unable to come to an agreement regarding whether Defendants are entitled to such records. Accordingly, Defendants filed a motion to compel, (Dkt. No. 28), National Union responded, (Dkt. No. 35), and Defendants replied. (Dkt. No. 40.)

Subsequent to Defendants filing the motion to compel, National Union filed a motion for a protective order to prevent Defendants from deposing an individual regarding certain information, that raises closely related issues.[4] (*See* Dkt. No. 31.) In effect, National Union seeks

---

[Request for Production 6]{.underline}: That National Union produce each document in its possession "refers to or relates to [National Union's] assertion(s) as to what constitutes reasonable rates for the attorneys and other legal professionals handling the defense of each of the underlying actions." (Dkt. No. 30, Ex. A at 15.)

[3] [Interrogatory 4.c]{.underline}: That National Union identify each person with knowledge relating to "the rates that you pay (or have paid over the last five years) for the attorneys and other professionals that you have hired to defend legal actions against you in the jurisdiction where each of the underlying actions is or was pending, or the rates that you pay (or have paid over the last ten years) for any work by any attorney or other professional at Dentons USA LLP," and for each person state the facts National Union believes he or she knows. (Dkt. No. 30, Ex. A at 9–10.)

[Interrogatory 9]{.underline}: That National Union identify "any and all legal proceedings in which Dentons US, LLP (or any predecessor firm or attorney from said firm(s)) has represented you." (Dkt. No. 30, Ex. A at 12.)

[Request for Production 7]{.underline}: That National Union produce all documents in its possession that "refer[] to or relate[] to the rates that you pay (or have paid) for any work by any attorney or other professional at Dentons US LLP (or any predecessor firm or attorney from said firm(s))." (Dkt. No. 30, Ex. A at 15–16.)

[4] [Topic 1]{.underline}: how National Union decided what hourly rates it would pay for the defense of each of the underlying actions; [Topic 2]{.underline}: each factor considered in deciding the rates paid for the defense of each of the underlying actions; [Topic 3]{.underline}: hourly rates for partners, associates, and paralegals paid to SNR Dentons USA, LLP, in the last five years; [Topic 4]{.underline}: hourly rates for partners, associates, and paralegals that National Union has paid in any class action lawsuit in Illinois, Michigan, or California in the last five years, and the identity and qualifications of each of the professionals so paid, and the nature of the engagement for which they were retained; [Topic 5]{.underline}: hourly rates for partners, associates, and paralegals that National Union paid in defense of itself in any lawsuit in Illinois, Michigan, or California in the last five years, and the identity and qualifications of each of the professionals so paid, and the nature of the engagement for which they were retained; [Topic 6]{.underline}: the identity and qualifications of each attorney or law firm that National Union believes would have been qualified to defend each of the underlying actions and that would have accepted the hourly rates National Union decided it would pay in each of the underlying actions; [Topic 7]{.underline}: each lawsuit that National Union has engaged such attorney

ORDER
PAGE - 3

to bar Defendants from asking any questions concerning any information related to the issues raised in Defendants' motion to compel. Defendants responded, (Dkt. No. 42), and National Union replied. (Dkt. No. 45.)

Because the substantive issues underlying the motions are the same, and involve much of the same legal analysis, the Court will address them simultaneously.

## II.   DISCUSSION

In opposition to Defendants' motion to compel, as well as in support of its motion for a protective order barring a Rule 30(b)(6) deposition, National Union puts forward a number of arguments.  The Court will address each category of arguments in turn.

In discovery disputes, while the "party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements," *La. Pacific Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012), "the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Id. See also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (the party opposing discovery is "required to carry a heavy burden of showing" why discovery should be denied). Generally, a protective order related to a non-dispositive motion is only justified after the moving party shows "good cause" to protect a person or party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

The Court notes that it will generally not credit boilerplate or generic arguments, and expects parties to put forward sufficient facts, law, and analysis to allow the Court to determine

---

(from Topic 6) in the last five years; Topic 8: the hourly rates paid for the defense of each lawsuit set out in Topic 6; Topic 9: the reductions to defense invoices for the for the underlying actions that National Union has asserted, claimed or taken, and the bases for those reductions; Topic 10: The bases for each of National Union's denials—either affirmatively or on claimed lack of sufficient knowledge or information—of the allegations set forth in the counterclaims in this action; Topic 11: The bases for each of the affirmative defenses National Union has asserted in response to the counterclaims in this action. (Dkt. No. 32, Ex. A at 3.)

ORDER
PAGE - 4

whether an argument has merit.

### 1. Relevance

If a party fails to respond to proper interrogatories or discovery requests, the requesting party may move to compel a response under Federal Rule of Civil Procedure 37. Unless otherwise limited by court order, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Similarly, a party may move for a protective order if there is good cause to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, considerations that implicate relevance. Fed. R. Civ. P. 26(c)(1). At issue is whether the information sought is relevant to the obligation of fairness that an insurer owes an insured. *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 381, 383 (Wash. 1986)("[T]he duty of good faith of an insurance company defending under a reservation of rights includes an enhanced obligation of fairness towards its insured.").

Here, one of Defendants' counterclaims is that National Union wrongfully limited the amount it would pay Defendants' defense counsel in the underlying actions. National Union argues that "[t]here is no evidence here that counsel for Redbox was underpaid." (Dkt. No. 35 at 6.) To the extent National Union is arguing the substance of the relevant underlying issue—that Defendants have no legal basis to challenge the rates set by National Union—the Court finds that it would be inappropriate to rule on the merits of the underlying counterclaim when considering discovery motions. Such a determination is better suited for a motion for summary judgment. Indeed, National Union's arguments regarding the lack of evidence put forward by Defendants to justify discovery of the relevant information is premature, where the discovery process itself may be a vehicle to obtain the very evidence National Union contends is lacking.

National Union also makes a related relevance argument: that the issue of whether the attorneys' fees were acceptable can be resolved purely through interpreting the contract. (*See, e.g.*, Dkt. No. 31 at 4–5.) However, National Union does not put forward any discussion of the relevant contract terms, which makes it impossible for the Court to determine whether National

ORDER
PAGE - 5

1  Union is correct. However, the Court notes that, in addition to *Tank* making it clear that insurers
2  owe an "enhanced obligation of fairness" to their insureds when defending under a reservation of
3  rights, *Tank*, 715 P.2d at 383, there is also a duty of good faith and fair dealing inherent in every
4  contract in Washington. Thus, if a party has the discretion to interpret a portion of a contract—as
5  National Union, here, alleges that it has discretion to determine the reasonable fees it will pay
6  under the contract—there is a good faith obligation that inheres in that discretion even when
7  there is no breach of an express contract term. *Rekhter v. State Dept. of Soc. and Health Servs.*,
8  323 P.3d 1036, 1041 (Wash. 2014) (holding that there may be a breach of the duty of good faith
9  and fair dealing under the contract even when there is no express breach of a contract term, and
10 that the duty arises when the contract gives one party discretionary authority to determine a
11 contract term). In any case, again, it is inappropriate to resolve the merits of an underlying claim
12 on a motion to compel, and the Court declines to do so.

In order to determine whether the rates put forward by National Union satisfy the duty it owes to Defendants, Defendants must be able to: 1) determine whether National Union used reasonable methods to determine the rates to pay for defense counsel in the relevant action; and 2) compare the rates paid by National Union in the underlying cases, to those paid by National Union to defend suits of comparable complexity. The Court finds that the information sought is relevant.

Accordingly, the Court declines to deny Defendants' motion to compel, or grant National Union's motion for a protective order, on the grounds that the information and documents sought are irrelevant.

### 2. Privilege

Under Rule 26, only non-privileged information generally need be produced. Fed. R. Civ. P. 26(b)(1). However, the Ninth Circuit has held that "boilerplate objections or blanket refusals . . . are insufficient to assert a privilege." *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). "A party claiming the privilege must

identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002). Thus, proper methods of asserting privilege generally convey "some information about the content of the allegedly privileged material, which a boilerplate objection does not do." *Burlington N. & Santa Fe R.R. Co.*, 408 F.3d at 1148.

Here, National Union argues that Interrogatory No. 9 requesting that National Union identify all legal proceedings in which Dentons US, LLP represented it, encompasses information "which is unmistakably privileged or protected by the work product doctrine."[5] (Dkt. No. 35 at 10.) National Union also argues that Requests for Production 5 and 7 are protected by the work-product doctrine. (Dkt. No. 35 at 8, 11.) National Union also asserts that the information about which it seeks a protective order "is protected by the right of privacy and/or any applicable privilege, including consumer information that contains, identifying, contact or private financial information." (Dkt. No. 31 at 9.)

National Union submits no evidence in support of its assertion of privilege.[6] National Union does not describe, in any of the declarations, any of the information that it believes may be privileged. Nor does National Union submit a privilege log that would allow the Court to determine whether its assertions of privilege are legitimate. Nor does National Union put forward any legal authority to support its assertion of privilege. It is not facially obvious to the Court that the information sought—such as rates paid to specific counsel, or a list of actions in which a party was represented by a particular law firm—are protected by privilege. Accordingly, the Court finds that National Union has not sufficiently asserted privilege for the Court to address its claims. The Court declines to deny the motion to compel or grant the motion for a protective

---

[5] This complaint is distinct from the issue of "proprietary and confidential information," which the Court will address below.
[6] Again, while National Union discusses, in the declarations submitted in support of its motion for a protective order, issues related to proprietary and confidential information, those issues are separate from the issue of privilege.

ORDER
PAGE - 7

order on the grounds of privilege.

### 3. Proprietary and Confidential Information

National Union also asserts that disclosure of the information should be prohibited because it is proprietary and confidential.

When a party opposes discovery on the basis that the information sought to be discovered is a trade secret, *see* Fed. R. Civ. P. 26(c)(1)(G), the party opposing discovery must show that the information is a trade secret under that provision of Rule 26. *In re Remington Arms, Inc.*, 952 F.2d 1029, 1032 (8th Cir. 1991). At that point, the burden shifts to the other party to demonstrate the information's relevance. *Id.* "If the party seeking discovery shows both relevance and need, the court must weigh the injury disclosure might cause to the property against the moving party's need for the information." *Id.*

National Union contends that by revealing how it calculates the rates it pays to parties requesting a defense under an insurance contract, it will reveal propriety information, which in turn may give its competitors an advantage. (*See* Dkt. No. 31 at 6–8; Dkt. No. 33 at ¶¶ 8, 13; Dkt. No. 34 at ¶¶ 7–13.) The Court will assume that this qualifies as a trade secret. However, as noted above, Defendants have shown that the information sought is relevant. Moreover, because there is no other way of gaining the information, and because the information sought is necessary to resolve the claim at issue, the Court also finds that Defendants have demonstrated need. Finally, there is a stipulated protective order in this case, (*see* Dkt. Nos. 26 & 27), which will prevent the information from being made public. Weighing the two interests, the Court finds that the potential for injury is outweighed by Defendants' need for the information, as the risk of injury will be greatly lessened by the stipulated protective order, and the information is necessary to resolve the counterclaim. Accordingly, the Court finds that the relevant interests weigh in favor of disclosure.

National Union also appears to assert that disclosure of legal rates paid to specific firms will harm the interests of those firms by putting them at a disadvantage. (Dkt. No. 34 at ¶ 12.)

National Union submits no evidence by someone with personal knowledge of that assertion, such as a member of one of the firms. Moreover, the relevant information will be protected by a stipulated protective order. Accordingly, the Court finds that disclosure is necessary.

### 4. Undue Burden

Under Rule 26, "a court must limit the frequency or extent of discovery otherwise allowed by these rules" if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

National Union asserts that a number of the discovery topics will cause National Union undue burden. However, National Union rests its assertions primarily on the alleged irrelevance of the information. (*See, e.g.*, Dkt. No. 31 at 6, Dkt. No. 35 at 4.) The Court has already ruled that the information sought is relevant. National Union does not attempt to apply the facts to the considerations set out in Fed. R. Civ. P. 26(b)(2)(C)(iii), assuming the information is relevant.

Here, the Court will assume that, as put forward by National Union and its witnesses, it will burden National Union to provide someone capable of answering certain of the Topics at issue in National Union's Motion for a Protective Order.[7] However, the Court finds that the needs of the case, the amount in controversy (nearly $2 million in legal fees are at issue), the parties' resources (National Union is a large corporation with sufficient resources to comply with the relevant requests), and the importance of discovery in resolving the issue, all counsel in favor of allowing discovery to proceed. The information is not available through other channels, and it appears to the Court that the information is necessary to resolve the dispute over attorneys' fees.

---

[7] National Union provided no evidence to support its contention that it would burden National Union to respond to the interrogatories and requests for production at issue in Defendants' motion to compel. All evidence submitted relates solely to the contested deposition topics.

ORDER
PAGE - 9

### 5. Speculation, Vagueness, and Overbreadth

National Union opposes the interrogatories that ask that it identify a person with knowledge about the legal rates paid in past actions, as well as "the facts you believe he or she knows" about the issue or subject. (Dkt. No. 35 at 7.)[8] National Union argues that it "cannot venture to guess what any such person knows as that would constitute speculation and conjecture." (Dkt. No. 35 at 7.) However, as the employer of those individuals, National Union would presumably have some knowledge of how they perform their duties. The Court does not find this objection convincing.

National Union also makes a number of objections based on certain questions' vagueness, for instance that the "qualifications" of relevant legal professionals are unclear apart from the jurisdictions in which they are admitted to practice. However, National Union agrees that it takes into consideration the legal professionals' credentials and legal specialty when determining whether to approve a firm as a part of a panel. (*See* Dkt. No. 34 at ¶ 6.) Accordingly, the request does not appear vague to the Court.

Nor does the Court find that the term "you" in the various topics is vague or overbroad. Defendants themselves agree that "[i]n support of the business needs of National Union and its affiliates (collectively known as "AIG"), a dedicated firm management group, responsible for establishing and managing panels of approved law firms, exists as a shared resource for AIG's lines of business." (Dkt. No. 34 at 3.) Moreover, some of the relevant evidence thus far provided to Defendants related to information regarding what AIG pays when it is working for all entities that operate through AIG, not just National Union. Accordingly, National Union has opened the door to questions related to all such entities, and "you," in that context, is not overbroad.

---

[8] National Union objects to similar interrogatory related to the rates paid to defend actions in the jurisdictions in which the underlying actions were filed—as well as all actions defended by a lawyer associated with Dentons US LLP within the past ten years—on similar grounds. The Court's analysis applies equally to those objections.

ORDER
PAGE - 10

The Court has considered all other arguments in the briefing. The Court hereby GRANTS Defendants' motion to compel, and DENIES National Union's motion for a protective order.

### A. Fees

Generally, if the Court grants a discovery motion, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion." Fed. R. Civ. P. 37(a)(5)(A). However, the Court must not order that payment if the opposing party's nondisclosure, response, or objection was substantially justified or other circumstances make an award of expenses unjust.

Accordingly, National Union is ORDERED TO SHOW CAUSE by July 25, 2014, why it should not pay the reasonable attorneys fees of Defendants in bringing this motion.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to compel, (Dkt. No. 28) is GRANTED. National Union's motion for a protective order, (Dkt. No. 31), is DENIED.

DATED this 10th day of July 2014.

John C. Coughenour  
UNITED STATES DISTRICT JUDGE