THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

CASE NO. C13-1014-JCC

10

ORDER

11

Plaintiff,

12

v.

13

COINSTAR, INC., et al.,

14

Defendants.

15    This matter comes before the Court on Plaintiff's motion for summary judgment. (Dkt.

16  No. 37.) Having thoroughly considered the parties' briefing and the relevant record, the Court

17  finds oral argument unnecessary and hereby GRANTS IN PART and DENIES IN PART the

18  motion for the reasons explained herein.

19  **I.      BACKGROUND**

20    This is a declaratory judgment action in which Plaintiff National Union Fire Insurance

21  Company of Pittsburgh, PA ("National Union") originally sought a declaration that it had no

22  duty to defend or indemnify Defendant Redbox Automated Retail, LLC ("Redbox") for the class

23  action lawsuit captioned *Sterk v. Redbox Automated Retail, LLC*, Case No. C11-1729 (N.D. Ill.

24  2011). Defendants asserted several counterclaims against National Union, seeking a declaration

25  that National Union had a duty to defend or indemnify Redbox in several additional lawsuits,

26  captioned *Cain v. Redbox Automated Retail, LLC*, Case No. C12-15014 (E.D. Mich. 2012),

ORDER
PAGE - 1

1   *Mehrens v. Redbox Automated Retail, LLC*, Case No. C11-2936 (C.D. Cal. 2011),[1] and *Holt v.*

2   *Redbox Automated Retail, LLC*, Case No. C11-3046 (S.D. Cal. 2011).[2] (Dkt. No. 15.)

3          Redbox is a wholly-owned subsidiary of Defendant Coinstar, Inc.[3] ("Coinstar"), which is

4   listed as the insured in multiple Commercial General Liability Insurance Policies issued by

5   National Union. Redbox operates self-service kiosks from which customers can rent movies on

6   DVDs and Blu-ray discs. Redbox tendered claims to National Union for each of the underlying

7   lawsuits. National Union agreed to defend them subject to a reservation of rights. However,

8   Redbox argues that National Union has not been involved in good faith efforts to defend the

9   lawsuits under its reservations of rights, and that it wrongfully decided to limit the amount it

10  would spend on attorneys working to defend the lawsuits.

11         On February 28, 2014, the Court granted partial summary judgment to National Union on

12  National Union's original claim, relating to whether National Union had a duty to defend

13  Redbox in the *Sterk* lawsuit. The remaining issues include whether National Union is obligated

14  to defend Redbox in the *Cain* and *Mehrens* suits, and whether National Union improperly limited

15  the amount it would pay the attorneys defending Redbox in any of the underlying suits.

16      **1.  The Policies**

17         National Union issued two Commercial General Liability Insurance policies to Coinstar,

18  Inc., which owns Redbox. Policy No. 457-30-37 was in effect from September 1, 2009 to

19

20  _____

21      [1] The Ninth Circuit affirmed the dismissal of the *Mehrens* lawsuit on June 6, 2014. *See
    Sinibaldi v. Redbox Automated Retail, LLC*, Case No. C12-55234, 2014 WL 2535471 (9th Cir.
22  2014). Moreover, it does not appear that Plaintiffs have filed a petition for a rehearing *en banc*,
    and the deadline for such a petition has expired. Nonetheless, the Court will resolve issues
23  related to coverage in *Mehrens*, in case some eventuality makes it necessary for Redbox to incur
    further expenses in defending the case.
24      [2] *Holt* has since been dismissed, and the only remaining issue related to that case is
    whether National Union has paid the amount it was required to pay to defend the suit under its
25  reservation of rights.
        [3] Coinstar is now known as Outerwall, Inc. The Court refers to "Coinstar" in this order
26  based on the parties' briefing and the fact that Coinstar is listed in the relevant insurance policies.

ORDER
PAGE - 2

1  September 1, 2010. (Dkt. No. 20, Ex. B.) Policy No. 457-32-92 was in effect from September 1,

2  2010 to September 1, 2011. (Dkt. No. 20, Ex. C.) Both policies provide coverage for "personal

3  injury and advertising injury" liability under the Coverage B Agreements. (Dkt. No. 20, Ex. B at

4  NU 028; Ex. C at NU 104.) As relevant to the instant dispute, the policies provide the following

5  definition:

6          14.     "Personal injury and advertising injury" means injury, including

7                   consequential "bodily injury", humiliation, mental anguish or shock, arising out of one or more of the following offenses:

8                   [. . .]

9

10                 e.     Oral or written publication, in any manner, of material that violates a person's right of privacy.

11  (Dkt. No. 20, Ex. B. at NU 036; Ex. C at NU 112.) The policies also contain numerous

12  exclusions applicable to Coverage B. Specifically relevant is Exclusion (p), which provides as

13  follows:

14  **Exclusion – Violation of Statutes in Connection with Sending, Transmitting,**

15  **or Communicating Any Material Or Information**

16  This insurance does not apply to any loss, injury, damage, claim, suit, cost or expense arising out of or resulting from, caused directly or indirectly, in whole or

17  in part by, any act that violates any statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws,

18  that addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

19

20  (Dkt. No. 20, Ex. B. at NU 084; Ex. C at NU 160.)

21        The Court found that, in *Sterk*, the plaintiffs' claim that Redbox violated the Video

22  Protection Privacy Act ("VPPA") by disclosing personally identifiable information about its

23  customers, *see Lane v. Facebook, Inc.*, 696 F.3d 811, 822 (9th Cir. 2012), was one that arose out

24  of an act that violates a statute addressing the sending, transmitting or communicating of any

25  material or information. The Court found that National Union was not obligated to defend

26  Redbox in that suit. (*See* Dkt. No. 25.)

ORDER
PAGE - 3

2. **The *Cain* Lawsuit**

The *Cain* lawsuit is a class action lawsuit asserting violations of Michigan's Video Rental Privacy Act, which generally forbids entities "engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings" from "disclos[ing] to any person, other than the customer, a record or information concerning the purchase, lease, rental, or borrowing of those materials by a customer that indicates the identity of the customer." Mich. Comp. Laws § 445.1712. There are five narrow exceptions to that law. Mich. Comp. Laws. § 445.1713. The plaintiffs in that case alleged that Redbox violated the statute by sending customer information to third parties, gathered when a customer rents a movie, without the customer's consent. (Dkt. No. 39, Ex. 1 at 10–13.)

3. **The *Mehrens* Lawsuit**

The *Mehrens* lawsuit is a class action lawsuit asserting violations of California's Song-Beverly Credit Card Act, codified at Cal. Civ. Code § 1747.08, which forbids entities that accept credit cards for the transaction of business from requesting or requiring the cardholder to write, or provide to the entity to write, any personal identification information on a credit card transaction form. Cal. Civ. Code § 1747.08(a)(1)–(2). It similarly bars the use of a credit card form that contains preprinted spaces designated for filling in any personal identification information of the cardholder. Cal. Civ. Code § 1747.08(a)(3). There are specific exceptions to those requirements. Cal. Civ. Code § 1747.08(c). "Personal identification information" is information concerning the cardholder, other than information set forth on the credit card. Cal. Civ. Code § 1747.08(b). In *Mehrens*, the plaintiffs argued that when Redbox requested a customer's billing zip code and/or email, it violated of Cal. Civ. Code § 1747.08 because such a request constituted a request for personal information under the statute. (Dkt. No. 39, Ex. 2 at 18–19.)

//

//

### 4. Communications Regarding Tenders of Claims, Reservations of Rights, and Attorney Fee Rates

On January 11, 2012, after receiving a tender of claim from Redbox regarding the *Mehrens* suit, National Union sent a reservation of rights letter to Redbox. (Dkt. No. 38, Ex. 2.) In that letter, National Union, "[a]s a matter of good faith and fair dealing" agreed to "pay for defense costs incurred by Redbox as of January 6, 2012 with respect to th[at] lawsuit." (*Id.* at 2–3.) However, it "reserve[d] the right to limit payment to only those attorney fees that comport with [its] defense billing guidelines." (Dkt. No. 38, Ex. 2 at 2 n.3.) The same day, National Union sent a similar reservation of rights letter to Redbox regarding Redbox's tender of claim in the *Sterk* suit. (Dkt. No. 38, Ex. 1.) On April 18, 2012, National Union agreed to provide "provide a defense to Redbox [in *Holt*] under a complete reservation of rights against the claims set forth in the class action lawsuit." (Dkt. No. 38, Ex. 3 at 4.) On February 28, 2013, National Union agreed to "provide a defense to Redbox [in *Cain*] subject to a full reservation of rights." (Dkt. No. 38, Ex. 4 at 1.) In each of the letters sent, National Union noted that coverage was limited under the terms and conditions of the insurance policy. In none of the suits did National Union retain counsel for Redbox, or indicate that it intended to appoint counsel of its own. Indeed, in the suits that had not been resolved,[4] National Union agreed to the continued retention of the attorneys previously hired by Redbox.

National Union first alerted Redbox to the rates it would pay attorneys to defend certain of the above suits on September 5, 2012. It informed Redbox that the rates it would pay to defend Redbox in *Sterk* were "$240 for senior partner, $220 for junior partner, $183 for senior associate, $173 for junior associate, and $80 for paralegals." (Dkt. No. 41, Ex. 2.) Later, National Union informed Redbox that the same rates would apply to the defense of the other actions at issue in this case. (*See* Dkt. No. 43 at 2–3, ¶ 4.)

//

---

[4] At the time the letters wre sent, *Holt* had been dismissed.

ORDER
PAGE - 5

1    **5.   Proceedings in this Court**

2         On May 28, 2014, National Union filed a motion for summary judgment on all

3    counterclaims, arguing that it has no obligation to defend Redbox in either *Cain* or *Mehrens*, and

4    that it is not obligated to pay attorneys fees in excess of the rates it set. (Dkt. No. 37.) Redbox

5    responded, (Dkt. No. 47), and National Union replied. (Dkt. No. 49.) Redbox filed a notice of

6    supplemental authority. (Dkt. No. 50.)

7    **II.    DISCUSSION**

8         Under Federal Rule of Civil Procedure 56, the Court must enter summary judgment if the

9    record shows "that there is no genuine issue as to any material fact and that the moving party is

10   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue

11   of material fact exists, the Court must determine "whether the evidence presents a sufficient

12   disagreement to require submission to a jury or whether it is so one-sided that one party must

13   prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

14   Accordingly, the Court must "draw all reasonable inferences in favor of the nonmoving party,

15   and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson*

16   *Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In Washington, the interpretation of an

17   insurance policy is a question of law. *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.*, 881 P.2d 1020, 1025

18   (Wash. 1994) (en banc). Courts construe the terms of an insurance policy in a "fair, reasonable,

19   and sensible" manner, as "the average person purchasing insurance" would understand them.

20   *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002) (quotation marks omitted). If the

21   policy language is clear and unambiguous, the court must enforce it as written and may not

22   modify it or create ambiguity where none exists. *Int'l Ins. Co.*, 881 P.2d at 1025.

23        "The duty to defend generally is determined from the 'eight corners' of the insurance

24   contract and the underlying complaint." *Expedia, Inc. v. Steadfast Ins. Co.*, Case No. 88673-3,

25   2014 WL 3199497 at *4 (Wash. July 3, 2014) (en banc). In this case, three separate claims are at

26   issue: whether the claims raised by the plaintiffs in the *Cain* lawsuit are within the scope of the

1    insurance policies; whether the claims raised by the plaintiffs in the *Mehrens* lawsuit are within

2    the scope of the insurance policies; and whether National Union has the unbounded authority to

3    determine the attorney fee rates it will pay to defend the underlying lawsuits under a reservation

4    of rights.

5         **A.    *Cain* lawsuit**

6         Under Washington law, the duty to defend is broader than the duty to indemnify. *Hayden*

7    *v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171 (Wash. 2000) (en banc). The duty to defend

8    arises at the time an action is first brought, and is based on the potential for liability. *Truck Ins.*

9    *Exch. v. VanPort Homes, Inc.*, 58 P.3d 276, 281 (Wash. 2002) (en banc). "The duty to defend

10   'arises when a complaint against the insured, construed liberally, alleges facts which could, if

11   proven, impose liability upon the insured within the policy's coverage.'" *Id.* at 281–82 (quoting

12   *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Ct. App. Wash. 1999)). Conversely, the duty to

13   indemnify "hinges on the insured's actual liability to the claimant and actual coverage under the

14   policy." *Hayden*, 1 P.3d at 1171. An insurer defending a suit under a reservation of rights "must

15   defend until it is clear that the claim is not covered." *Am. Best Food, Inc. v. Alea London, Ltd.*,

16   229 P.3d 693, 696 (Wash. 2010) (en banc). *See also Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124,

17   1126 (Wash. 1998) (en banc).

18        Here, Michigan's Video Rental Privacy Act ("VRPA"), at issue in *Cain*, is effectively

19   identical to the federal VPPA at issue in *Sterk*, and a similar analysis governs, barring coverage.

20   (*See* Dkt. No. 25 at 4–8.) In effect, because Michigan's Video Rental Privacy Act bars the

21   disclosure of any "record[s] or information concerning the purchase, lease, rental, or borrowing"

22   of a video recording to any person other than the customer, Mich. Comp. Laws § 445.1712, and

23   because Exclusion (p) excludes from coverage any loss arising from the violation of a statute that

24   "addresses or applies to the sending, transmitting or communicating of any material or

25   information, by any means whatsoever," (Dkt. No. 20, Ex. B. at NU 084; Ex. C at 160),

26   Exclusion (p), by its terms, excludes coverage for claims arising under the Michigan VRPA. The

1    "disclosure" of information to any non-customer person under the VRPA is necessarily

2    encompassed by the terms "sending, transmitting or communicating any material or information,

3    by any means whatsoever." Thus, as a matter of contract interpretation, Exclusion (p) precludes

4    coverage for Redbox's alleged breaches of the Michigan VRPA in the *Cain* lawsuit.

5         Redbox argues that National Union should be estopped from asserting that the *Cain*

6    claims are not covered by the policies. Under Washington law, "insurers have not only a general

7    duty of good faith, . . . but also a specific duty to act with reasonable promptness in investigation

8    and communication with their insureds following a notice of claim and tender of defense." *St.*

9    *Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 669 (Wash. 2008) (en banc). Thus,

10   an insurer "who accepts the duty to defend under a reservation of rights but then performs the

11   duty in bad faith, is no less liable than the insurer who accepts but later rejects the duty." *Safeco*

12   *Ins. Co. of Am. V. Butler*, 823 P.2d 499, 504–05 (Wash. 1992). "[W]here an insurer acts in bad

13   faith in handling a claim under a reservation of rights, the insurer is estopped from denying

14   coverage." *Butler*, 823 P.2d at 505. While "harm is an essential element of an action for an

15   insurer's bad faith handling of a claim under a reservation of rights," there is a rebuttable

16   "presumption of harm" as long as the insured has established bad faith. *Butler*, 823 P.2d at 506.

17   Thus, if the insured prevails on the bad faith claim and the insurer fails to rebut the presumption

18   of harm, "the insurer is estopped from denying coverage." *Id.*

19        As Redbox notes, an insurer accepting a duty to defend under a reservation of rights

20   "may not desert policyholders and allow them to incur substantial legal costs while waiting for

21   an indemnity determination." *Truck Ins. Exch.*, 58 P.3d at 282. Redbox contends that National

22   Union acted in bad faith by accepting the case under a reservation of rights, and then "failing to

23   pay any costs for the last 17 months or otherwise provide any other support to Redbox in *Cain*."

24   (Dkt. No. 47 at 8.)  But it was Redbox that asked to appoint its own counsel and then be

25   reimbursed by National Union. Redbox could have demanded that National Union appoint and

26   directly pay counsel on its behalf, but Redbox decided instead to hire its own attorney, and be

1   reimbursed.

2       There is no suggestion that National Union has gained any benefit by failing to reimburse

3   Redbox as promptly as Redbox desires. This is not a case where the insurance company was

4   alleged to have failed to conduct an investigation, which resulted in lost evidence. *See Butler*,

5   823 P.2d at 506. Nor did National Union allegedly attempt to manipulate Redbox's lawyers into

6   giving it information that would help it avoid coverage. *Id.* Moreover, the evidence submitted

7   shows that National Union has *not* abandoned Redbox: National Union has responded to

8   Redbox's correspondence; has agreed to fund—at least partly—the defense regardless of

9   whether Redbox is actually covered; and has reimbursed Redbox at least partly for the expenses

10  that Redbox has incurred. National Union's failure to reimburse Redbox as quickly as Redbox

11  would prefer cannot wholly neutralize the evidence that National Union has participated in the

12  forgoing proceedings and has not abandoned Redbox to its fate. Thus, the late payment of

13  invoices—the only substantive basis put forward by Redbox for bad faith[5]— is not sufficient to

14  create a genuine issue of material fact as to the existence of bad faith.

15      Accordingly, the Court finds that there is no genuine issue of material fact as to whether

16  the defense of *Cain* is covered by the insurance policy, as well as whether National Union is

17  estopped from arguing that *Cain* is not covered by the contract.

18      **B.**   ***Mehrens* Lawsuit**

19      An insurer's "duty to defend arises at the time an action is first brought, and is based on

20  the potential for liability." *Truck*, 58 P.3d at 281. "The duty to defend generally is determined

21  from the 'eight corners' of the insurance contract and the underlying complaint." *Expedia, Inc. v.*

22  *Steadfast Ins. Co.*, Case No. 88673-3, 2014 WL 3199497 (Wash. July 3, 2014) (en banc). Thus,

23  _____

24      [5] Redbox argues that in addition to the late payments, National Union failed to "otherwise
    provide any other support to Redbox in *Cain*." (Dkt. No. 47 at 8.) But as noted above, Redbox
25  itself decided to select its own attorney and seek reimbursement, as opposed to allowing National
    Union to select an attorney on its behalf. In any case, Redbox does not define the "other support"
26  to which it believes it is entitled.

ORDER
PAGE - 9

1   for the Court to determine the presence or absence of the duty to defend, the Court must look to

2   the language of the insurance contract, and see whether that language covers the behavior in the

3   underlying complaint giving rise to the cause of action. Here, for the insurance policies to cover

4   the *Mehrens* suit, the underlying injury in *Mehrens* must consist of a "personal injury and

5   advertising injury," defined as any form of injury, humiliation, mental anguish or shock, "arising

6   out of" the "[o]ral or written publication, in any manner, of material that violates a person's right

7   of privacy." (Dkt. No. 20, Ex. B. at NU 036; Ex. C at NU 112.)

8          The claim underlying the *Mehrens* lawsuit is that Redbox "requested and/or required

9   [Mehrens] to provide his ZIP code and e-mail address, which [Redbox] recorded as a part of

10   processing the credit card transaction," and that, as a result, "[Mehrens] provided personal

11   identification information to [Redbox] and [Mehrens] is informed and believes [Redbox]

12   recorded said information in their computer and information systems," in violation of California

13   Civil Code § 1747.08. (Dkt. No. 39, Ex. 2 at 18, ¶ 75.) That statute prohibits an entity that

14   accepts credit card charges as payment from requesting or requiring that the cardholder provide

15   personal identification information when accepting a credit card payment. Cal. Civ. Code §

16   1747.08(a). Personal identification information is "information concerning the cardholder, other

17   than information set forth on the credit card, and including, but not limited to, the cardholder's

18   address and telephone number." Cal. Civ. Code. § 1747.08(b).

19          The California statute is not concerned with, and does not prohibit, the publication of any

20   information. *See* Cal. Civ. Code. § 1747.08(a). Rather, it prohibits an entity from requesting or

21   requiring personal identification information from the holder of a credit card. Thus, the injury

22   alleged in *Mehrens* did arose out of the alleged collection of personal information, rather than its

23   oral or written publication, as required by the insurance policy. (*See* Dkt. No. 20, Ex. B. at NU

24   036; Ex. C at NU 112.)

25          It is true that, as Redbox points out, the *Mehrens* complaint also alleges that Redbox used

26   the "ZIP codes collected during the checkout process for marketing purposes," (Dkt. No. 39, Ex.

ORDER
PAGE - 10

1    2 at 10, ¶ 49), "share[d] their customer personal information databases with outside entities,"

2    (Dkt. No. 39, Ex. 2 at 13, ¶ 59), and "profit[ed] by sending 'marketing information on behalf of

3    one of [Redbox's] business partners about products or services they provide . . .' to its customers

4    using the personal identification information collected during credit/debit card transactions."

5    (Dkt. No. 39, Ex. 2 at 13, ¶ 60.) However, those allegations are not relevant to the single cause of

6    action in the *Mehrens* complaint, which rests solely on allegations that Redbox wrongfully

7    requested or collected personal information from its customers. (*See* Dkt. No. 39, Ex. 2 at 18, ¶

8    75.)

9          Accordingly, there is no genuine issue of material fact as to whether the injury alleged

10   arose out of the oral or written publication of any material that violated the right of privacy of the

11   plaintiffs in the *Mehrens* suit.

12         **C.      Payment of Defense Fees**

13         In Washington, if an insurer accepts defense of an action, with or without a reservation of

14   rights, "the insured receives the benefit of a defense until a court declares none is owed." *Nat'l*

15   *Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 693–94 (Wash. 2013). Thus, an insurer "may be

16   held responsible for the reasonable defense costs incurred by its insured until [a] trial court

17   determine[s] [that the insurer] had no duty to defend." *Id.* at 695. An insurer is released from its

18   obligation to pay for the defense of an action only "[a]fter obtaining a declaration of

19   noncoverage." *Id.* at 694. Here, Redbox argues that National Union is breaching its duty to

20   defend[6] by unilaterally determining the amount it will pay the attorneys defending Redbox in the

21   underlying actions, by failing to use reasonable factors to set such limits, and by failing to alert

22   Redbox to the relevant limits before Redbox incurred defense costs. (Dkt. No. 15 at 9–10, ¶¶ 20–

23   26.) National Union argues that this claim is invalid for several reasons.

24   _____

25        [6] Here, at issue is the duty to defend, not the duty to indemnify. These are supported by
     the letters sent by National Union accepting defense of the actions under a reservation of rights.
26   (*See* Dkt. No. 38, Ex. 1 at 1–2; Dkt. No. 38, Ex. 2 at 3; Dkt. No. 38, Ex. 3 at 2; Dkt. No. 38, Ex.
     4 at 1.)

ORDER
PAGE - 11

1    First, National Union states that because "National Union has no duty to defend Redbox

2 in the underlying lawsuits . . . [i]t necessarily follows that any issue regarding the defense of

3 Redbox would be rendered moot, once it has been determined that the National Union Policies

4 do not cover the underlying lawsuits." (Dkt. No. 37 at 17.) Thus, National Union argues that

5 "Redbox's counterclaims regarding the defense costs should be dismissed." (*Id.*) However, under

6 a reservation of rights, an insurer is responsible for paying all reasonable defense costs incurred

7 by the insured until a court determines that the insurer has no duty to defend. *Immunex*, 297 P.3d

8 at 693–94. Thus, even though the Court now holds that National Union no longer has a duty to

9 defend Redbox in *Cain* and *Mehrens*, and previously held that the same is true for *Sterk*,

10 National Union is still responsible for "all reasonable defense costs incurred," *id.*, up until such a

11 time as the Court informs it that it no longer has a duty to defend.

12    Second, National Union argues that the policies grant it unlimited discretion to determine

13 the amounts it will pay to defend Redbox. Specifically, it argues that the contractual provision

14 that reserves to National Union "the right and duty to defend the insured against any 'suit'

15 seeking" specified damages and states that National Union "may, at [its] discretion, investigate

16 any offense and settle any claim or 'suit' that may result," vests with National Union "the right to

17 control the defense including the selection of defense counsel." (Dkt. No. 37 at 18.) Thus,

18 National Union argues that it has "the contractual right to control the defense of Redbox in the

19 underlying lawsuits," and Redbox does not have the right "to dictate how the defense [is] to be

20 conducted or how much defense counsel [is] to be paid by the insurer." (Dkt. No. 37 at 20.)

21 Moreover, National Union notes that the contract specified that Redbox should not, "except at

22 the insured's own cost, voluntarily make a payment, assume any obligation, or incur any

23 expense, other than for first aid, without [National Union's] consent." (Dkt. No. 37 at 21)

24 (quoting Dkt. No. 20, Ex. B at NU 33, Ex. C at NU 109.)[7] In effect, Redbox appears to be

25

26    [7] However, in National Union's reservation of rights letters, it agreed to allow Redbox to
retain the counsel it had selected, and thus gave consent to Redbox to incur certain expenses that

1   arguing that it has the sole power to set the rates it will pay for the defense of a lawsuit, without

2   any restrictions, and regardless of the unreasonableness of its rates.

3       A defense under a reservation of rights "must be a real defense." *Immunex*, 297 P.3d at

4   694, and the insurer "may be held responsible for the reasonable defense costs incurred by its

5   insured until [a] trial court determine[s] [that the insurer] had no duty to defend." *Id.* at 695.

6   Thus, barring a contract term to the contrary, National Union does not have unbounded

7   discretion to unilaterally limit the rates it will pay. Here, there were no provisions in the policy

8   that explicitly limited the rates National Union would pay. It is true that generally insureds may

9   not "freely conduct their own litigation and then seek reimbursement" where the policy obligates

10  the insurer only to "defend through counsel of its own choosing." *Griffin v. Allstate Ins. Co.*, 29

11  P.3d 777, 782 (Ct. App. Wash. 2001). But here, National Union explicitly "agree[d] to [the

12  attorneys'] continued retention as Redbox's defense counsel." (*See* Dkt. No. 38, Ex. 1 at 1–2;

13  Dkt. No. 38, Ex. 3 at 2; Dkt. No. 38, Ex. 4 at 1.) In doing so, it relinquished its right to choose an

14  attorney to defend the underlying suits. And while National Union did say that the rates it would

15  pay were limited by the terms and conditions of the insurance policies, no attorney fee rates were

16  set out in the policies. Nor did National Union alert Redbox to the relevant attorney fee rates in

17  its reservation of rights letters. In the absence of a policy provision limiting the rates National

18  Union agreed to pay, it is responsible for the reasonable defense costs incurred by its insured.

19      Finally, while National Union does not primarily rely on arguments related to the

20  reasonableness of the various fee rates, the Court declines to grant summary judgment on such a

21  basis. The reasonableness of the rates of the attorneys hired by Redbox to defend the underlying

22  suits—as well as the reasonableness of National Union's attorney fee rates—is a question of fact

23

24

25  it agreed to reimburse. It argues, however, that its consent was limited when it said that it would
    only pay rates consistent with the rates it typically paid to its panel counsel, and that the

26  attorneys selected by Redbox would be obligated to comply with AIG's litigation guidelines.
    (Dkt. No. 37 at 22.)

1    that should not be decided on a motion for summary judgment.

2          There is a genuine issue of material fact as to whether National Union was allowed to

3    limit the rates paid to attorneys to defend the underlying suits to $240 for senior partners, $220

4    for junior partners, $183 for senior associates, $173 for junior associates, and $80 for paralegals.

5    The Court declines to grant summary judgment on Redbox's claim regarding the inadequacy of

6    the rates that National Union agreed to pay for the defense of the underlying actions.

7    **III.**      **CONCLUSION**

8          For the foregoing reasons, National Union's motion for summary judgment (Dkt. No. 37)

9    is GRANTED IN PART and DENIED IN PART. The Court GRANTS summary judgment to

10   National Union as to Redbox's declaratory judgment claims regarding coverage under the *Cain*

11   and *Mehrens* lawsuits, and DENIES summary judgment as to whether it is allowed to

12   unilaterally set the fee rates for the attorneys hired by Redbox to defend the various lawsuits.

13          DATED this 7th day of August 2014.

14

15

16

17

18

19                                         _____

20                                    John C. Coughenour
                                         UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

ORDER
PAGE - 14